RUSSELL v. OGDEN UNION RY. & DEPOT CO.

No. 7647.   Decided August 6, 1952.   (247 P. 2d 257.)

See 56 C. J. S., Master and Servant, sec. 47. Liability for wrongful discharge of employee. 35 Am. Jur., Master and Servant, sec. 54; 72 A. L. R. 1049.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, D. A. Alsup,* all of Salt Lake City, for appellant.

*Howell, Stine & Olmstead,* Ogden, *Clyde C. Patterson,* Ogden, for respondent.

McDONOUGH, Justice.

Defendant appeals from a judgment awarding plaintiff substantial damages for an alleged arbitrary and wrongful discharge. Plaintiff, respondent here, was employed as a switchman by the defendant. The employment relationship was covered by a collective bargaining agreement between the defendant and the Brotherhood of Railway Trainmen. Article VIII, Rule 38, of this agreement provided:

"38. *Investigations:* No yardman will be suspended or dismissed without first having a fair and impartial hearing and his guilt established. The man whose case is under consideration may be represented by an employe of his choice; * * * In case dismissal is found to be unjust yardman shall be reinstated and paid for all time lost * * *."

Article XIII, Rule 55 (b) of the agreement stated:

"55 (b). Yardmen taking leave of absence for a period of over ten days must secure and fill out Form 153 so the leave will be covered as a matter of record."

Upon alleged violation of this latter provision, plaintiff was notified by defendant that a hearing in accordance with Rule 38 would be held. Subsequently, plaintiff, accompanied by a union representative, appeared at the hearing which was conducted in defendant's offices by Mr. Caulk, the defendant's assistant superintendent. The hearing was completely reported and transcribed by Mr. Caulk's clerk. Plaintiff was the only witness called and he was interrogated by Mr. Caulk as follows:

"Q. Mr. Russell this is an investigation relative you being absent from duty over 10 days without leave of absence in violation of BRT

Rule 55B. Do you wish a representative. A. Yes sir, Mr. Hudgens. (Will represent me.)

\* \* \* \* \*

"Q. Do you know the rule that you will not absent yourself from duty 10 days or over without written leave. A. Yes sir.

"Q. Why didn't you obtain written leave. A. Because I was sick in bed at the time.

\* \* \* \* \*

"Q. What other business are you engaged in that you cannot work for the Depot Co. A. None of my own.

"Q. Are you working any place else. A. No.

"Q. I understand you own a Club up the Canyon. A. No.

"Q. You work up there don't you. A. Yes." (Plaintiff later upon signing the transcript, changed this answer to "No.")

Mr. Hudgens then interrogated plaintiff and asked:

"Q. And you talked to train desk before the expiration of your 10 days. A. No. They called me on the 31st \* \* \* and told me to be here for investigation and I was too sick and couldn't make it."

Upon this transcript and upon undisclosed information that plaintiff falsified as to his illness and as to his employment elsewhere, the defendant discharged plaintiff giving as the basis for discharge the violation of Rule 55(b).

Plaintiff brought action alleging arbitrary, unjust, and wrongful discharge and asking for reinstatement and compensation for all time lost as provided for under Article VIII, Rule 38. The lower court, reasoning that Rule 55(b) did not cover situations where men were ill and hence was not applicable to the plaintiff, concluded that the discharge was arbitrary and wrongful. The court further concluded that plaintiff did not have a fair and impartial hearing, that his guilt was not established as required by Rule 38, and that hence there was an unjust and wrongful discharge of plaintiff resulting in a breach of the employment contract.

In determining the issues, the court considered only the unsworn transcript of the hearing and refused to admit defendant's proffers of proof which were offered to show that the testimony of plaintiff at the hearing was false in that plaintiff was working in a beer parlor; that plaintiff did not consult a physician until the seventh day he was absent, at which time he visited the doctor to be treated for an earache; that after his dismissal he requested a release from the physician without disclosing that he had been dismissed; that the physician would testify that plaintiff was able to work at the time he visited the office; that during the years plaintiff had been employed by defendant he could have worked every day, but he actually only worked a minor part of the time; and that during the entire ten days involved plaintiff was physically able to work and he was working in a beer parlor. A letter to defendant dated May 14, 1946, from the acting vice president of the Switchmen's Union with respect to the union's investigation of plaintiff's conduct "resulting in false testimony evidenced during formal investigation of August 3, 1945" and announcing that the "investigation has been completed" and "we are withdrawing the grievance and the case is closed," was received in evidence by the court. In fixing damages, the court relied on his construction of Rule 38, and refusing to take plaintiff's interim earnings in mitigation, awarded plaintiff $18,892.76 as compensation for all time lost from his employment with defendant. On the basis of no jurisdiction to so order, the court refused to reinstate plaintiff. Defendant appeals.

Several assignments of error, presently to be individually considered, are bottomed on one fundamental contention. Defendant concedes that the respondent, although a railway labor employee and subject to the Railway Labor Act, might prosecute an action in the district court for wrongful discharge. But it contends that the respondent, having elected to bring a common-law action for wrongful discharge, the common-law principles relative

to such action apply to the trial of the case, and that the court is without jurisdiction to construe the contract and to apply its provisions in such manner as might be done by the Railroad Adjustment Board pursuant to the provision of the National Railway Labor Act. U. S. Code, Title 45, Chapter 8, 45 U. S. C. A. § 151 et seq. Appellant's position on this fundamental proposition is sound. That a distinction exists between proceedings before such Board and the awards which might be made by it, and a common-law action before the courts is, we think, abundantly clear from the cases of *Slocum* v. *Delaware L. & W. R.*, 339 U. S. 239, 70 S. Ct. 577, 580, 94 L. Ed. 795, and *Moore* v. *Illinois Central Railroad Company*, 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089. In the *Slocum* case, the U. S. Supreme Court pointed out:

"Our holding here is not inconsistent with our holding in *Moore* v. *Illinois Central Railroad Company*, 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board is empowered to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

See also to the same effect *Order of Railway Conductors* v. *Southern Railway Company*, 339 U. S. 255, 70 S. Ct. 585, 94 L. Ed. 811.

Respondent, plaintiff below, sought by his complaint all the relief which he might seek had he processed his grievance claim to the Railroad Adjustment Board, including

the right to be reinstated to his former position with defendant company with seniority rights unimpaired. This last mentioned relief the court held, and correctly, it had no jurisdiction to grant. It, however, proceeded to adjudicate the case in all other respects in the same manner as might be done by such Board. In so doing, we are confident it erred. Thus concludng relative to the fundamental error alleged, we address ourselves to the several assignments of error with more particularity. Appellant asserts that the lower court erred in (1) receiving the unsworn transcript of the hearing before the assistant superintendent of the defendant as substantive evidence of the matters stated therein; and (2) even assuming the transcript receivable in evidence for that purpose, it erred in precluding defendant from showing the testimony given therein was false and the dismissal was in fact justified.

The transcript was properly received in evidence, but it was improperly considered by the court to be the exclusive evidence receivable as to facts therein testified to. Furthermore, the testimony therein given by plaintiff as to his illness was, as contended by defendant, hearsay and should not have been considered by the court as substantive evidence of the fact of illness. However, its contents were relevent and material to evidence the kind of hearing that was accorded plaintiff. It is evidence of the fact that he was given notice of the hearing, that it was postponed at his request, that he was given opportunity to present evidence, to be represented by an employee of his own choice. It further evidenced the contract provision he was charged with violating, and furthermore contained his admission of the fact that he did not comply with the provision in question. It also reveals the reason or excuse he advanced for failing to comply with such provision— Article 13a, Sec. 55 (b) of the Collective Bargaining Agreement. But the issue before the court was whether or not the plaintiff was wrongfully and arbitrarily discharged. The plaintiff had the burden of establishing that fact.

However, upon proof of the contract of employment such as that herein involved, the employee established a prima facie case by proving such contract, his performance thereof up to the time of discharge, and ·damages. 56 C. J. S. Master and Servant, § 53, p. 454. The burden of proving justification for the discharge then falls upon the employer. In proving such justification, the employer may present any legal or equitable defense available to overcome such prima facie case. (Op. cit.) The court below hence erred in rejecting the proffered evidence of the defendant.

It is true that in a proper case the transcript of the hearing might itself reveal unjust discharge. Thus, if it showed conclusively that the plaintiff was not accorded his rights under the contract: that he was not given adequate notice, or was not given opportunity to be heard or to be represented by an employee of his choice, the discharge would be wrongful, because according the employee such rights is, under the contract, a condition precedent to discipline or discharge. But that is not the case before us.

Furthermore, the transcript did not reveal all the proceedings had between the parties to this lawsuit relative to plaintiff's discharge. The letters introduced into evidence by the plaintiff reveal that the local chairman of the Switchmen's Union of North America, the labor organization to which the plaintiff belonged, after being duly authorized by the plaintiff so to do, made application to the Superintendent of defendant for reinstatement of plaintiff. The request was denied. Pursuant to the provisions of the employment contract and in accordance with the provisions of the Railway Labor Act, the acting Vice President of this union appealed from the Superintendent's denial of the request for reinstatement to the Vice President of defendant. The letter heretofore referred to from the Vice President of the union to the Vice President of defendant indicates that conferences were had between the representatives of the employer and the employee, after which the representative of the latter apparently indicated that his investi-

gation showed that the plaintiff had given false testimony at the hearing before the assistant superintendent. He closed his letter with the statement, "Investigation has been completed" and "We are withdrawing the grievance and the case is closed." It is to be remembered that plaintiff, through his representative, was confronted by the contention of defendant that the testimony which he had given at the hearing conducted by the defendant was false. Had plaintiff, before the withdrawal of his grievance, awaited an adverse ruling from the Vice President of the defendant, he might have appealed from this decision to the Railroad Adjustment Board and had the matter there reviewed. He, through his representative, chose not to do so. It would be a travesty on justice to permit the plaintiff to recover in this proceeding substantial damages based upon an unsworn statement of the interested plaintiff which his duly authorized representative evidently concluded was false. The evidence bearing on its truth or falsity was clearly receivable in evidence, as well as the other proffered testimony which had a bearing upon the ultimate issue.

At this point, we refer briefly to a contention of the plaintiff. He contends that since Rule 38, Art. 8, of the Collective Bargaining Agreement provides that

"No yardman will be suspended or dismissed without first having a fair and impartial hearing and his guilt established",

the correct construction of such rule requires that the evidence taken before the investigating officer of the Railroad must clearly reveal the yardman's guilt. For several reasons, we think that this contention is without merit. In the first place, in any investigation or hearing there must be a trier of the facts. In disciplinary matters, the trier of such facts is the investigating officer of the employer. Of course, if the investigation reveals that the charges made were without substance or inconsequential or that the evi-

dence in support thereof would not justify disciplinary action, then any finding made by the trier of the fact would be unsupported and in itself would not support disciplinary action. But the credibility of the witness is one of the things on which the trier of the facts must pass. Of course, he may not arbitrarily disbelieve credible evidence or ground a finding upon mere suspicion, surmise or conjecture. Indeed, in the instant case it would have been better for the defendant company to have revealed to plaintiff at the hearing the evidence in its possession relative to the alleged falsity of the excuse given by plaintiff for failing to comply with the contract provision invoked, in order to give him an opportunity to rebut it. But he was thereafter, through his representative, confronted with the contention of the Railroad and given an opportunity to refute such contention. We here reiterate that he is here seeking redress in the courts for an unjust discharge. The court as the trier of the fact must determine whether or not his guilt was in fact established.

Before proceeding to a discussion of appellant's assignment relative to the measure of damages, we address ourselves to two other assignments of error. Defendant contends that its motion for nonsuit should have been granted. It asserts that since there was an admitted violation of the contract provision relative to securing a leave of absence, such fact in and of itself justifies the action of the Railroad in dismissing the plaintiff from its service, that the discipline assessed for violation of the contract rule is exclusively within the discretion of the employer and cannot be controlled by the courts. At first blush, the argument appears valid. However, two answers thereto readily suggest themselves. In the first place, it is practically conceded in the brief of defendant that if the plaintiff was in fact unable, because of illness, to comply with Article XIII, Rule 55(b), the defendant would not have assessed the discipline that it did. Secondly, the action of the defendant in discharging the plaintiff might well be

held by a court to be arbitrary if the record before such court revealed, in fact, that because of illness the employee was unable to comply with the strict letter of the rule. The court did not err in refusing to grant the motion for a nonsuit.

But appellant asserts that because of a provision in the collective bargaining contract it was powerless after the expiration of six months to reinstate the plaintiff. The contract governing the relationships between the defendant and its employees was one between the Brotherhood of Railroad Trainmen and the defendant. It covered the employer-employee relationship of all of the employees of the defendant of the class to which plaintiff belonged, regardless of whether they were members of the Railroad Brotherhood or not. The plaintiff, as noted, is a member of the Switchmen's Union of North America. The contract provision invoked by appellant provided

"Reinstatement will not be permitted after the expiration of six months from the date of dismissal, unless agreeable to the management and the general committee [of the Brotherhood of Railroad Trainmen] except that a case pending with either the B. R. T. or O. R. C. at the expiration of a six months' period, will not be prejudiced".

Appellant proffered evidence to the effect that at no time after the expiration of six months from the date of plaintiff's discharge was the general committee of the Brotherhood of Railroad Trainmen agreeable to the reinstatement of the plaintiff. The proffered evidence was properly rejected. Refusal to reinstate plaintiff upon his application made a couple of weeks prior to the expiration of the six months period was on the ground that the plaintiff had violated the contract between the employer and its employees. Subsequent to the expiration of a six months period, the record does not reveal that refusal to reinstate was upon the ground that the consent of the general committee of the B. R. T. could not be obtained. Had such a

claim been advanced, the plaintiff hight have been able to secure such consent. For instance, he might have made application for membership and have been received as a member in the B. R. T. He was not given the opportunity to take whatever action might be open to him to obtain the required consent. In such circumstance, the defendant cannot be heard to say that refusal to reinstate was upon the ground suggested by this assignment of error. It was upon the ground that the plaintiff was not unjustly discharged. In this case it must win or lose upon that issue. If its actions prove to be unjust, it cannot charge its inability to reinstate the plaintiff to the nondefaulting employee.

Appellant's next contention is that the trial court erred in its assessment of damages. This contention must be sustained. As noted hereinabove, the trial court having found a wrongful discharge of the plaintiff, assessed his damages in the total amount that he could have ▮▮▮▮ earned between the date of his application for reinstatement as an employee of the defendant and the date of the filing of his complaint, had he worked every available working day. The court refused to consider any evidence relative to plaintiff's earnings in other employment during that period despite evidence admitted which revealed that during four years of such time, he had earned in excess of $7,000. In support of the trial court's ruling in this respect, respondent points to an award of the first division of the Railroad Adjustment Board, wherein the Board acting with a referee made such an award. We are advised, however, that the decisions of the Railroad Adjustment Board are not in harmony in so construing the rule here involved, that is, a rule providing for reinstatement and pay for all time lost in case of unjust dismissal. However, whatever be the proper construction of such provision of a contract where a grievance is processed to the Adjustment Board, the ruling of such Board which would support respondent's contention, has no application in a court of law. It is clearly

pointed out in the cited award of the Board—Award No. 13,048—that the Board, as constituted at the time of the award, construed such provision as providing a penalty and had no reference to damages. It is well settled that a provision in a contract between private individuals for a penalty in case of a breach of such contract is unenforceable in the courts. See *Croft* v. *Jensen,* 86 Utah 13, at page 20, 40 P. 2d 198, at page 202, and authorities there cited. The correct measure of damages for breach of an employment contract by an employer is the amount an employee would have received as wages had the contract been performed, less what he had earned during the period in question, or what he might by reasonable diligence earn in other appropriate employment subsequent to his discharge. See 35 Am. Jur., Master and Servant, Sec. 57, and cases cited.

For the reasons stated, the judgment appealed from is reversed. The cause is remanded to the lower court with directions to grant a new trial. Costs to appellant.

WOLFE, C. J., and WADE and HENRIOD, JJ., concur.

CROCKETT, Justice.

I concur in the opinion but add this observation: I do not agree with the contention which the Railroad apparently makes, that all that is required of it is to give proper notice, hold a hearing, and that it is entirely up to their representative to make the determination regardless of how arbitrary it may be. Our opinion should not be susceptible of any such interpretation. In the absence of a contract of employment for a definite period, an employer may normally discharge an employee at his will. The agreement here was for continuing employment. And under Rule 38, plaintiff could not be dismissed until

"* * * his guilt [was] established."

### And further

"* * * in case dismissal is found to be unjust [he] * * * shall be reinstated * * *."

The foregoing provisions of this rule clearly indicate that the employee must have been guilty of some misconduct justifying his dismissal. If it should be shown that the dismissal were entirely capricious and arbitrary, that would be a breach of the agreement and he would be entitled to redress.

The hearing was not conducted properly. The record should have shown that, as opposed to plaintiff's statement that he was ill and unable to get permission for the absence of more than ten days, the parties were aware of the facts concerning plaintiff's misrepresentations about his illness, and willful neglect of his employment. These facts were known to both sides in the controversy and the plaintiff's own representative finally conceded that the plaintiff was justifiably discharged. This being so, there was no prejudice to plaintiff in the instant case because of the manner in which the hearing was held.