413 P.2d 891

Vincent **CHIODO**, and Vincent Chiodo and Ethel Chiodo, as former stockholders of Bear River Telephone Company, on their own Behalf and on Behalf of other persons similarly situated, Plaintiffs and Respondents,

v.

**GENERAL WATERWORKS CORPORATION**, a Delaware corporation, Bear River Telephone Company, a Utah corporation, and 2500 shares of stock of Bear River Telephone Company, a Utah corporation, Defendants and Appellant.

No. 10473.

Supreme Court of Utah.

May 5, 1966.

the dissenting opinion of Justice Crockett in Hughes v. McCormick, Utah, 412 P.2d 613, decided March 31, 1966.

426

Fabian & Clendenin, Peter W. Billings, Salt Lake City, for appellant.

Pugsley, Hayes, Rampton & Watkiss, David K. Watkiss, Salt Lake City, Walter G. Mann, Brigham City, for respondents.

CROCKETT, Justice.

The plaintiff, Vincent Chiodo, sued for breach of a contract which employed him

for a period of ten years as the manager of the defendant, Bear River Telephone Company, when he was discharged after three years. Defendant seeks to justify its action upon the grounds: (1) that plaintiff was guilty of insubordination and insolence to his superiors; (2) that he cheated the company in certain payroll practices; and (3) that he was disloyal. Upon trial to the court it found the issues in favor of the plaintiff and rendered judgment for his salary for the remaining seven years, discounted for payment in cash, in the sum of $81,264.99, plus $6,500 owing on a retirement policy. Defendant appeals.

In 1943, the plaintiff acquired the Bear River Telephone Company, located at Tremonton, Utah, which serves principally Box Elder County in the northwest quadrant of the state. Due to the industrial development attendant upon World War II, particularly because of Thiokol Chemical Corporation, there was a rapid increase in population and business in that area. Under the plaintiff's management the defendant prospered and expanded the number of telephones from about 700 to over 5,000. Because of continued increasing demands and inadequate capital, he decided to sell. After negotiations he accepted an offer from defendant General Waterworks to convey to them for shares of that company upon certain conditions. One of them was that they agreed to employ him as manager of Bear River Telephone Company for ten years at a salary of $12,000 per year. The pertinent language of their letter is thus:

"In accordance with the understanding and agreement, which we have arrived at, *your employment by Bear River is to continue for a period of ten years from the date hereof.* * * * Nothing in this letter agreement, however, shall be held to preclude your continuing employment by Bear River after such ten-year period."

■ Under a contract of employment for a stated term it is to be assumed that the parties intended that the employee would conform to the usual standards expected of an employee, and that he would render honest, faithful and loyal service in accordance with his ability.[1] If there is a wilful and substantial failure to adhere to those standards it would be justifiable cause for the employer to discharge him. The question of moment here is whether the plaintiff's conduct constituted such justifiable cause for his discharge.

■ Inasmuch as the contract for plaintiff's employment stated nothing with respect to standards of his conduct, nor of his possible discharge, the trial court properly received evidence relating to the negotiations of the parties which resulted in the

1. As to employee's duty to follow directions of employer, see Evans v. Stuart, 17 Utah 2d 308, 410 P.2d 999.

contract to determine their intent with respect to these questions.[2] Some of these discussions between plaintiff and defendant [its Vice President, A. W. Sanders] had been recorded and were presented in evidence:

> "Mr. Chiodo: I don't want to have this thing [employment contract] come up here with me. I want it tied down so that there's no question about it, *and you decide to fire me, that you're going to pay my $500.00 every two weeks for ten years.* Mr. Sanders: My opinion of this is that we can't fire you for ten years. That is what Hansen [defendant's attorney] tells me. * * *

> \* \* \* \* \* \*

> "Mr. Chiodo: Yes, but I can't write myself a check for $500.00 on payday if you refuse to sign the check; then what? I'm fired right?

> "Mr. Sanders: No, I'm no attorney, of course, but the attorneys tell me this all your way. We can't do anything.
> \* \* \* \* \* \*

> "Mr. Sanders: No. As you and I discussed it before, we're going to let you run the property as you see fit."

In an attempt to justify its discharge of the plaintiff the defendant makes these accusations:

*Payroll Padding:*

(1) That the plaintiff had his adult son, Don Chiodo, on the defendant's payroll while he was working for a construction company in Montana;

(2) That two of plaintiff's sons at various times between July 1961, and December 1962, used other employees of the defendant to do work which the sons had contracted to do for defendant on a fixed-fee-basis, which they received;

(3) That plaintiff improperly had his 14-year-old granddaughter on the payroll and paid her $354.20.

*Insubordination:*

(1) That the plaintiff refused to obey orders to cancel a policy of insurance on defendant's properties;

(2) That plaintiff told employees of the defendant that certain of defendant's officers were incompetent.

*Disloyalty:*

That he breached confidence by telling the Public Service Commission of Utah that General Waterworks was trying to sell the company to Mountain States Telephone & Telegraph Company; and that he was himself interested in repurchasing the company.

It is interesting, almost amazing, at times to see how human minds with their own interests to serve see pictures as either black or white and fail to discern and recog-

2. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

nize the shadings and the grays. The accusations against plaintiff as stated by the defendant seem impressive, and there appears to be some truth in each, but that does not paint the whole picture as it is filled out by the plaintiff's evidence as to his answers:

*Payroll Padding:*

(1) The son, Don Chiodo, had worked for defendant during his vacation, had done extensive night work for it on his own time, for which he had not been paid. In order to make up for this, the plaintiff had kept him on the defendant's payroll during a period of nine days while he was in Montana.

(2) The charge that the defendant's employees were used to perform work on the Don and Gene Chiodo subcontract: Mr. Sanders, the Vice President, who arranged for the work to be done on the contract, knew and agreed that some of defendant's employees would have to be used to perform some of the technical work. The employees who testified stated on cross-examination that they did not know whether the work done by them was included under the Chiodo's sub-contract or not.

(3) Payment to the 14-year-old granddaughter: The plaintiff had for some years followed a policy of determining what the mailing of telephone directories would cost, then permitting employees, including sometimes members of his family, to have the same amount of money for personally delivering them, which work was done by the granddaughter and she was compensated for it.

*Insubordination:*

(1) Plaintiff admits refusing to follow the directive to cancel a policy of insurance covering properties of the defendant. He had purchased the policy on the basis of bids submitted; under the circumstances felt a moral obligation not to cancel it; thought it was a good policy, necessary for the protection it afforded; and that it was within his prerogative as manager to keep it in force. When he refused to cancel it and so advised the defendant's main office, nothing more was said about the matter until this action was brought over 20 months later.

(2) What he said about the incompetency of certain of defendant's officers was true.

*Disloyalty:*

In informing the Public Service Commission of pending negotiations for sale, he was keeping faith with the Commission because he had assisted in the transfer of the franchise to defendant by making personal assurances that General Waterworks was not purchasing for purposes of speculation, but with bona fide intention of continuing the operation of the defendant company. He felt that the latter's disregard of the representations made justified his advising the Commission and indicating a willingness to repurchase the company himself.

**430**

There were other accusations of less consequence, generally similar to those recited above both in character and in explanation, which we need not detail. For the most part they can be characterized as disagreements between defendant's officers and plaintiff which he insists were provoked by their own mistakes and their continual attempts to interfere with his management.

■ The decisive answer to defendant's arguments about the matters above recited is that the trial court was persuaded in accordance with the plaintiff's contentions. It is true that some of his remarks in discussing the case could be interpreted as reflecting doubt as to his views on certain of the evidence, and as to the standards of honesty and integrity applied to the plaintiff. But the overall view taken appears to be this: that although the plaintiff's conduct may not have been exemplary in all respects, he had been a good manager as evidenced by the fact that the operation of the company had been profitable under his leadership; and that after friction developed between him and other officers of the company as to various aspects of the management, the latter sought to dredge up

accusations of misconduct to justify discharging him. But his explanations of whatever irregularities may have existed were sufficiently reasonable and acceptable under the circumstances that the defendant failed to meet its burden of showing justification for his discharge.[3] The court made its findings accordingly and they prevail over comments from the bench.[4]

■ There are two reasons why the trial court was justifiably not impressed with the defendant's insistence upon mitigation of damages. First, as the deal was worked out, the payment of this salary for ten years could well be regarded as a deferred payment of part of the overall consideration plaintiff required for his telephone company. Second, inasmuch as the plaintiff is sixty years old, it would be unrealistic to conjecture as to his ability or desire to get another position and earn money for the purpose of mitigating defendant's damages.

Judgment affirmed. Costs to plaintiff (respondent). (All emphasis added.)

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.

3. That where one is employed under a contract, employer has burden of showing justification for discharge, see Russell v. Ogden Union Ry. & Dep. Co., 122 Utah 107, 247 P.2d 257.

4. See McCollum v. Clothier, 121 Utah 311, 241 P.2d 468 (1952); Walker v. Walker, 17 Utah 2d 53, 404 P.2d 253.