457 P.2d 760

**Fred KIRCHOF and Muriel Kirchof,
his wife, Appellants,**

**v.**

**David J. FRIEDMAN and Camelback Land
& Investment Co., an Arizona cor-
poration, Appellees.**

**No. I CA–CIV 951.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 6, 1969.

Charles A. Stanecker, Phoenix, for appellants.

Powers, Boutell, Fannin & Ridge, by James Powers, and Donald E. Anderson, Phoenix, for appellees.

JACOBSON, Judge.

This is an action by FRED KIRCHOF and MURIEL KIRCHOF, his wife, Plaintiffs in the Superior Court and Appellants herein, against DAVID J. FRIEDMAN and CAMELBACK LAND & INVESTMENT COMPANY, an Arizona corporation, Defendants in the Superior Court and Appellees herein for breach of a contract of employment.

The Superior Court of Maricopa County, sitting without a jury made findings of fact and conclusions of law and entered judgment in favor of both defendants. This court is called upon to determine whether or not there was sufficient evidence before the trial court to justify this judgment.

Plaintiffs were employed by Defendant CAMELBACK LAND & INVESTMENT COMPANY, on October 30, 1964, to manage the Villa Monterey Restaurant in Scottsdale, Arizona, for a period of two years, terminating on November 15, 1966. The letter contract of employment written by the Defendant CAMELBACK LAND & INVESTMENT COMPANY and accepted by the Plaintiffs provided among other things that the general policies of the operation of the restaurant were to be set by the employer, but the "day to day" management of the business, including the hiring, firing, purchases and similar matters were to be under the control of the Plaintiffs-employees. Plaintiffs were to be paid for their services the sum of $1,000.00 per month plus "25% of the

profits of the operation." It was found as a fact by the trial court that Villa Monterey Restaurant was an integral part of an overall development by the defendant corporation consisting of a golf course and housing development appealing primarily to persons without children in the above-average income bracket. During the course of Plaintiffs' employment, various disputes arose as to the operation of the restaurant which culminated on May 16, 1966, in defendant corporation terminating the services of the Plaintiffs, some six months prior to the termination date set by their contract of employment. This action was brought by Plaintiffs seeking damages for the breach of that contract. The Defendants contend that the termination of the contract was justified by Plaintiffs' insubordination and refusal to obey directions, thus affecting the overall policy of operation of the restaurant.

■ While this particular point appears to be a case of first impression in the State of Arizona, the law in this area is well settled. A principal is privileged to discharge, before the time fixed by the contract of employment, an agent who has committed such a violation of duty that his conduct constitutes a material breach of contract. Restatement (Second) of Agency Section 409 (1957). Willful disobedience which imparts a willful disregard of expressed or implied directions and a refusal to obey reasonable orders of the employer constitutes such a material breach. Cf. Bang v. International Sisal Co., 212 Minn. 135, 4 N.W.2d 113, 141 A.L.R. 657 (1942); Restatement (Second) of Agency Section 385 (1957); 9 S. Williston, Contracts Section 1013A (3d ed. 1967). We feel the above principles are controlling in this case, this being particularly true where, as here, the contract of employment expressly reserved the right to set policy in the employer and the alleged willful disobedience occurred in the employees' failure to follow this policy.

■■ Initially, the evidence shows that Defendant DAVID J. FRIEDMAN was president and sole stockholder of Defendant CAMELBACK LAND & INVESTMENT COMPANY. There is nothing, however, in the evidence to show that he acted in his dealings with Plaintiffs other than in his capacity as an officer of the Defendant corporation. Since an officer of a corporation in a contract action is not liable individually for the actions of his principal merely because of his office or interest as a stockholder, the judgment of the trial court in favor of FRIEDMAN was proper.

The evidence shows that disputes arose between the Defendant-employer and the Plaintiffs-employees which were set forth in a letter by Plaintiffs to the Defendant, dated January 19, 1966. In this letter, the Plaintiffs stated that they were to have exclusive control in the matter of hiring and firing personnel; they rejected changes in the menu suggested by the Defendant; Plaintiffs' advice to cancel newspaper advertising was rejected and certain matters concerning entertainment suggested by Defendant were rejected by the Plaintiffs. Plaintiffs contended that decisions in these areas were under the "day to day" operation of the business, the Defendant contending these areas affected policy and therefore were under its direction.

■ The term "policy" has been defined as "a specific decision or set of decisions designed to carry out a chosen course of action; a projected program consisting of desired objectives and the means to achieve them." Merriam-Webster New International Dictionary (3d ed. 1961).

No general principles can be laid down as to when control becomes a matter of general policy, as that term has been defined, or is a matter of "day to day" operation, each individual situation being determined by the particular facts involved. However, it appears to the court, especially in the type of business involved here, that control and direction in the areas of menus, personnel, advertising and entertainment

may, in a particular case, be a matter of policymaking rather than "day to day" operation. For example, the question of whether or not to serve steaks or pork chops on a particular day may very well be a matter of "day to day" operation. However, the overall type of menu presented by a restaurant certainly influences the atmosphere or image which the restaurant wishes to convey. The same may be said for the type of advertising a restaurant uses. This is also true of the hiring of other employees in the restaurant —the hiring and firing of a busboy or dishwasher having no effect on the overall operation of the business, while the employment of a chef or a hostess meeting the public would affect that operation. Probably no single function sets the tone of a restaurant-bar establishment more than the type of entertainment offered—a jazz band would attract a certain type of clientele, while a Western band would attract another, although the decision as to when this entertainment might be presented could be in the area of "day to day" operation.

Here, the Villa Monterey Restaurant was an integral part of an overall project of the Defendant corporation, which had as its primary goal the attraction of older, above-average income individuals without children. The means of achieving this goal was reserved to the defendant corporation, under its contract, by retention of control of policy as we have defined that term. The Plaintiffs in this action as employees, disagreed. The following testimony of Plaintiff FRED KIRCHOF on cross-examination is illustrative of this point:

"Q: Wouldn't you regard the propriety of the kind of advertising done by a restaurant as part of the policy consideration that went into it?

"A: No. I tell you, you are going far afield again. You are losing sight of the fact that we are in there on 25% of the profits, and we were trying to make that thing a profitable venture as far as we were

concerned just the same as Mr. Friedman was concerned. And I had enough experience in the restaurant business to know how to advertise and what to advertise and how to prepare menus and what to serve the public. And these things were to our own advantage to get these to get the most business at that particular spot at that particular time.

"Q: The next paragraph (quoting from letter of January 19, 1966) reads as follows:

'Your (referring to defendant corporation) interference with employees and other personnel is improper and your threats to certain of them is certainly beyond the scope of our agreement.'

"A: Yes.

"Q: Whose employees were they?

"A: Well, when we hire them, we naturally think of them as our employees. Mr. Friedman is paying them, that's true. But when it interferes with our operation, then he is interfering with something that is not within his realm."

Although it is commendable on the part of an employee to wish to make a profit for his employer, the means by which this profit is made is a matter entirely within the discretion of the employer, unless he agrees to forego that discretion. Here, the employer did not.

The fact that the contract of employment provided that the Defendants, in addition to a monthly salary, were to receive 25% of the profits from the operation does not aid the Plaintiffs here. The trial court as a conclusion of law found that the Plaintiffs did not have an agency coupled with an interest which prevented their discharge. With this we agree. An agency, in which the agent has no interest other than that which springs from his right to earn his compensation or commission, is not coupled with an interest so

as to be irrevocable. Cf. Annot., 28 A.L.R. 2d 1243 at 1250 and 1276 (1953). There is no showing that Plaintiffs had any interest in the restaurant itself other than the right, as additional compensation, to share in the profits, if any.

It is therefore the opinion of this court that where an employer expressly reserves to itself the right to set the policy and standards of operation of its business, and an employee refuses to follow the reasonable directions of his employer in regard to that policy, then the employee is guilty of insubordination and may be discharged for cause, without liability.

This court has on numerous occasions held that it will not disturb findings of the trial court based upon conflicting evidence where there is a reasonable basis in the record to support the trial court, Kolberg vs. McKean's Model Laundry & Dry Cleaning Co., 9 Ariz.App. 549, 454 P.2d 867 (May 27, 1969).

We find substantial evidence to support the judgment of the trial court and the same is therefore affirmed.

EUBANK, P. J., and HAIRE, J., concur.