

**Decided April 20, 1983**

IN THE DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

KAZUE NUMANO,                        )     CIV. NO. 81-0052
                                     )
            Plaintiff,               )
                                     )
        vs.                          )     FINDINGS OF FACT AND
                                     )     CONCLUSIONS OF LAW
SAIPAN HOTEL CORPORATION             )
and KOICHI ZUSHI,                    )
                                     )
            Defendants.              )
_____)

FINDINGS OF FACT AND CONCLUSIONS OF LAW

        This cause came on for trial before the Court
sitting without a jury.  (Because many of the witnesses were
not proficient in English, it was necessary to utilize the
services of several Japanese-English interpreters during the
course of the trial).  The Court, having reviewed the testimony
of the witnesses and the documents admitted into evidence,
makes the following findings of fact and conclusions of law.
Any findings of fact equally applicable as a conclusion of
law is hereby adopted as such and conversely any conclusion
of law applicable as a finding of fact is adopted as such.
///
///

611

## FINDINGS OF FACT

1. The Plaintiff, Kazue Numano, was first hired by Defendant Saipan Hotel Corporation on January 10, 1980 for a term of one (1) year as a "Front Desk Assistant Manager" at its Hafa Adai Beach Hotel (Hotel).

2. Plaintiff was re-hired to the same position in January 1981 for another year to expire in January 1982. (Exhibit 1)

3. A "Mr. Okamura" (Okamura) served in the capacity of General Manager of the Hotel prior to Plaintiff's employment in 1980.

4. Okamura and Plaintiff socialized with each other on occasions after working hours.

5. On or about May 3, 1981, Mr. Kazuo Kato (Kato) arrived from Japan to assume--with full authority--the position of General Manager of the Hotel. Okamura remained and shared in the management of the Hotel until the end of August 1981. Kato was responsible for decisions on major problems while Okamura was assigned responsibility over the "office, front desk and accounting."

6. Steven Mendiola, night manager who worked with Plaintiff and who had 14 years prior experience as General Manager of the Royal Taga Hotel, testified, that on one occasion he saw Plaintiff refuse to check out a customer until the NCR machine had cleared (this is so despite the possibility that information for check-out purposes could have been accomplished manually). In Mendiola's opinion: "her attitude was bad...(that) front desk must have nice personality." He went and reported this to Kato and upon his return to the front desk, saw the customer still sitting and waiting to be checked out.

612

7. Mendiola further testified that Plaintiff "did not treat me like a manager in front of customers" and she "refused to follow directions."

8. Koichi Zushi (Zushi) who was employed by Hotel on May 18, 1981, as Front Desk Manager and who was, therefore, Plaintiff's immediate supervisor:

   (a) was told by Plaintiff, on or about June 26, 1981 that she was going to the office of a travel agent but saw her instead at Town House (department store) and Carmen Safeway (supermarket). Upon her return, Zushi asked her where she had been and she said "travel agent."

   (b) experienced another incident with Plaintiff on July 5, 1981 regarding a reservation allegedly confirmed by her. Zushi attempted to discuss the problem with her but while talking to her she proceeded or continued to put make-up on her face. Zushi picked up a plastic ashtray and threw it on top of a desk to gain her attention. The ashtray broke and a piece flew against Plaintiff. "She continue to put make-up on face ignoring me... I walked towards her... she said she was not afraid. I continued shouting at her... she stood up and hit me on the face." Another employee came between them and Zushi told the Plaintiff to leave the room.

   (c) complained that no matter how many times he told her to do certain work and the manner in which the work was to be done she ignored him.

   (d) saw her on occasions return to work 2-3 hours late; that other employees complained to him about this and he in turn reported these complaints to the General Manager.

   (e) gave up his own room on one occasion to accommodate a customer (Elias Okamura) who had been overbooked by Plaintiff.

   (f) confronted Plaintiff regarding her reporting matters directly to Okamura instead of to him as her immediate supervisor and on these occasions she ignored him and whatever he had to say.

   (g) that as her supervisor, he considered her work unsatisfactory.

613

9.  Toshi Kase, Assistant General Manager, saw Plaintiff take lunch breaks in excess of one hour; that in February 1981, a tour conductor made room reservations with Plaintiff for April 1981 but there were no rooms available for the 23-25 people that came; that in his opinion she could not handle the responsibility for making room reservations for 104 rooms much less the 20 rooms that were then available. (The hotel was in the process of construction to increase its room accommodations to 104 rooms).

10. Kato testified that:

    (a) In order to investigate a purported error committed by Plaintiff, he suggested (requested, instructed or told Plaintiff) that she go with him and Zushi to see Mr. Jose Tenorio (Joeten).[1] Because she believed she was not involved in that particular incident, she refused to accompany them. Plaintiff was told twice to go. Ten minutes later, she changed her mind and went with them. (At the meeting with Joeten, it was determined that neither Joeten nor anyone else on his behalf knew anything of the incident involving the alleged room reservation.)

    (b) He instructed her on two occasions to first go to her supervisor (Zushi) whenever she needed assistance or if she needed help to resolve complaints instead of going to the general manager (Okamura and himself). She nevertheless ignored this instruction.

    (c) He told Plaintiff not to go or stay in rooms of employees, especially Okamura's. He saw her come out of Okamura's room on May 23 and told her that if he saw her doing it again, he would terminate her. She said okay but she did go to Okamura's room again.

    (d) He instructed her regarding discounts to customers emphasizing the need to first talk to the front desk manager. This instruction was not followed.

--------

[1] Joeten is a Saipan businessman. Page 1 of Exhibit B states: "Hafa Adai Beach Hotel is a subsidiary of Joeten Enterprises."

11. Prior to July 10, 1981, Kato discussed the matter of Plaintiff's employment with the President of Defendant corporation, Herman Guerrero, Director Olympio Borja and Okamura. He subsequently suggested to Plaintiff that she resign but she requested a letter of discharge.

12. On July 10, 1981, Kato wrote to Plaintiff (Exhibit 4) terminating her employment effective July 15, 1981[2] giving as a reason for termination the need to comply with Commonwealth laws which "provide that the resident workers shall be given first preference in employment in any industry or occupation for which resident workers are qualified and available."

13. When Kato gave Plaintiff the letter of termination, he orally told her that the real reason for her termination was due to her not listening to the managers' instructions or improving on her conduct.

14. Kato did not express the real reason for termination in Exhibit 4 because Okamura asked him not to mention anything that might harm her in the future when she tried to get another job and out of consideration (courtesy) to her.

15. Page 7 of the Employee Handbook (Exhibit B) states under "Job Performance... Refusal to obey your supervisor or other proper authority is cause for termination."

16. Complaints against Plaintiff relative to the performance of her work and compliance with house rules during her first year of employment of which Okamura was aware of and committed prior to Kato's assumption of the position of General Manager, do not constitute grounds for good cause to support Plaintiff's termination for the reason that they were condoned by the Defendant Hotel prior to and at the time her second year of employment commenced.

- - - - - - - - - -

[2] Plaintiff was given housing allowance and salary up to August 15, 1981.

615

17. The evidence is not conclusive that she committed the several reservation, booking, accounting and discounting errors she is alleged to have been responsible for. The evidence as found herein, however, shows other grounds sufficient to constitute good cause for her termination.

18. Plaintiff's conduct and attitude from the time a new general manager (Kato) arrived shows that she has been insubordinate, disobedient, defiant, insolent and disrespectful of and toward her supervisor and general manager. The evidence presented and her demeanor in court lends credence to a finding also that her conduct and attitude reflects the classic example of an employee taking advantage of a prior personal relationship established with the general manager (Okamura) and continuing such conduct through the general managership of Kato.

19. Based upon the opinions of Kase and Kato, Plaintiff was not qualified to serve competently in her position for the new enlarged hotel.

///
///
///
///
///
///
///
///
///
///

## CONCLUSIONS OF LAW

1. Where, as here, a contract of employment is for a definite term (one year) it may, nevertheless, be terminated for cause. Rosecrans v. Intermountain Soap & Chem. Co., 605 P.2d 963 (1980); Chiodo v. General Water Works Corp., 413 P.2d 891 (1966); Crillo v. Curtola et al., 204 P.2d 941 (1949).

2. The fact that the grounds for termination of the contract have not been specified in the contract itself does not preclude the employer from terminating the same contract for good cause. Twentieth Century-Fox Film Corp. v. Lardner, 216 F.2d 844 (1954) cert. denied 384 U.S. 944, reh. denied 348 U.S. 965. Moreover, the fact that Plaintiff was discharged for reasons other than what was stated in the letter of termination, Defendant is not precluded from discharging her for another legal cause. Twentieth Century-Fox Film Corp. v. Lardner, supra; Corman Aircraft Corp. v. Weihmiller, 78 F.2d 241 (7th Cir. 1935). Duenas v. MTC, Civ.Action 78-32, Dist.Ct.NMI March 19, 1980).

3. It is within the discretion of the employer to consider all of the facts regarding the employment of the employee and to determine whether a discharge is the appropriate remedy thereunder. Upon such a determination, the employer may lawfully discharge the employee. Kendrick v. Comm. of Zoological Subdistrict, 565 F.2d 524 (1977).

4. The issue of whether the employee has performed in a satisfactory manner is to be determined by the employer, and not by the courts. Percival v. General Motors Corp., 539 F.2d 1126 (1976).

///

617

5. The Plaintiff was discharged for insubordination and disobedience of rules, instructions and orders of the employer. As such, the conduct of the Plaintiff constitutes good cause for termination of the employment contract. See generally, Farrell v. Albuquerque Publishing Co., 589 F.2d 497 (1978); NLRB v. Consolidated D.Elect. Co., 469 F.2d 1016 (1972).

6. The Plaintiff's repeated violation of the Hotel's policies, the flagrant disobedience of the employer's instructions by the Plaintiff, the defiance of a supervisor by the Plaintiff and the lack of cooperation by the Plaintiff with the employer are sufficient justification for termination of the employment contract and the discharge of the Plaintiff. Koehler v. Cummings, 380 F.Supp. 1294 (1974); Kirchof v. Friedman, 457 P.2d 760 (1969); NLRB v. Firesilver Manufacturing Co., 400 F.2d 644 (1968).

7. The Plaintiff provoked anger on the part of her immediate supervisor (Zushi) as a result of Plaintiff's continued misbehavior and misconduct. Where such conduct tends to interfere with the employer's business and business discipline, the employer is justified in discharging the employee. Jackson v. City of Akron, Ohio, 411 F.Supp. 680 (1976).

8. The Plaintiff was terminated by Defendant Hotel for good cause.

9. The Defendant Zushi did commit the act of assault upon the Plaintiff. The Plaintiff did, however, provoke the assault inasmuch as she exhibited both disrespect and contempt for her supervisor (Zushi) as he attempted to discuss a business matter with her and she ignored him by simply proceeding to put on make-up while he was speaking. As a result of the Plaintiff's flagrant indifference the Defendant threw a

plastic ashtray at the table top in front of the Plaintiff and the ashtray shattered causing a small piece of plastic to strike the Plaintiff harmlessly. Because the Plaintiff failed to prove any physical injury or pain resulting from the assault coupled with the provocation initiated by the Plaintiff, such circumstances instead warrant an award to the Plaintiff of only nominal damages in the sum of $1.00.

Based on the foregoing, the Court hereby grants judgment in favor of the Defendant Saipan Hotel Corporation, and against the Plaintiff Kazue Numano on the issue of Defendant's discharge of the Plaintiff.

The Court further grants judgment in favor of the Plaintiff Kazue Numano and against the Defendant Koichi Zushi on the issue of assault by the Defendant against the Plaintiff. The Plaintiff is hereby awarded nominal damages in the sum of $1.00 for such assault.

The Court further orders that judgment be entered accordingly.

DATED this 20ᵗʰ day of April, 1983.

_____
ALFRED LAURETA
Judge