Cindy **DUBOIS**, Plaintiff and Appellant,

v.

**GRAND CENTRAL, dba Fred Meyer,**
Defendant and Appellee.

No. 920649–CA.

Court of Appeals of Utah.

April 13, 1994.

Richard N. Bigelow, argued, Salt Lake City, for appellant.

Lee C. Henning, argued, and David C. Richards, Christensen, Jensen & Powell, Salt Lake City, for appellee.

Before DAVIS, JACKSON and GARFF,[1] JJ.

## OPINION

REGNAL W. GARFF, Senior Judge:

Appellant Cindy Dubois appeals a summary judgment in favor of appellee Grand Central dba Fred Meyer. We affirm.

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–

## FACTS

Because Dubois appeals from a summary judgment, we state the facts in the light most favorable to her as the nonmoving party. *Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 976 (Utah App.), *cert. granted*, 868 P.2d 95 (Utah 1993). The parties' dispute centers on Fred Meyer's dismissal of Dubois on January 4, 1991.

The parties agree that they had subsequently modified their at-will relationship via a document entitled "Fred Meyer Employee Responsibilities." However, they disagree as to the extent to which this document modified their at-will relationship. The preface on the document informed the employee, "you need to know and understand the principal reasons for the action outlined below." Under the heading, "Employee Conduct Which Will Result in Immediate Termination Without Prior Warning," is the following:

1. Dishonesty of any kind—ON OR OFF THE JOB. Some examples:

. . . .

b. Giving or receiving unauthorized credit or price discounts on merchandise sold or purchased in our stores. Unauthorized price discounts would include "AD" prices when such are NOT available to the public.

Other listed employee conduct that would result in immediate termination without prior warning includes:

6. Insubordination, such as willfully disobeying the instructions of an authorized person-in-charge, or disrespectful conduct toward a supervisor or person-in-charge.

. . . .

11. Other employment-related misconduct which is determined by the company to be of an equally serious nature.

While this form specified no particular process for fact-finding, it noted the following with regard to procedure: (1) the purpose of the document was to ensure that the employee would "know and understand the principal reasons" for the disciplinary action outlined therein; (2) the above behavior would result in immediate dismissal without prior warn-

24(10) (1992).

ing; (3) an employee could be terminated for employment-related misconduct "determined by the company to be of an equally serious nature."

Finally, the signature line of the document states that the employee "understand[s] this summary does not constitute an employment contract."

Dubois had worked for Fred Meyer on and off for nineteen years. Most recently, she worked as a manager and assistant manager of the photo-electronics department in the Fred Meyer Bountiful store.

On December 29, 1990, the Fred Meyer Bountiful store received a notice from corporate headquarters in Oregon regarding a 6800SX computer (the Computer) retailing for $999. Fred Meyer claims the notice concerned a stripped-down version of the 6800SX and refers to it as a "shell." Dubois disputes this theory. On December 31, 1990, Dubois's co-worker, Dave Swearngin, while reviewing the mail, saw the notice regarding the Computer retailing for $999. He pointed out this notice to Dubois, who mentioned she wanted to buy the Computer for this price. She checked the price on the Fred Meyer computer pricing system (the CEM system), a system used by Fred Meyer's employees to gain immediate price reference on all goods within the corporate system. Dubois noted that the CEM listed the Computer at $999.97.

On December 31, 1990, Dubois telephoned Gary Jones in Portland, Oregon to verify the price of the Computer. Jones worked as a Fred Meyer corporate buyer for the photo-electronics department. Based on her training, Dubois believed that any questions concerning Fred Meyer product prices would be resolved immediately and would be reflected in the CEM pricing system. She also believed that the prices on the CEM were the company's authorized prices. Jones told Dubois the price was wrong. He told her he would investigate the situation and would correct it.

Swearngin told Dubois that the price should be $1999. In Dubois's presence, he altered the notification to reflect the price of $1999.

Dubois did not work on January 1, 1991. When she came into work on January 2, 1991, she checked the price of the Computer on the CEM system noting that the earlier price had not been changed. Dubois told her manager, Dennis Robson, about the notice and about her conversation with Jones. Robson told Dubois to make sure the price was correct before buying or selling the Computer.

Because Jones had not called her and because the price remained unchanged on the CEM system, Dubois assumed the price was valid. That evening, she took the Computer from the back room, handed the cashier the UPC number which she had copied from the notice and which differed from the UPC number on the box. Dubois wrote a personal check for the price as listed on the CEM system, purchased the Computer, and took it home.

Dubois was not scheduled to work on January 3, 1991. On January 4, 1991, Chris Cox, an associate at another Fred Meyer store, informed Dubois that she would be fired because she purchased the Computer at an unauthorized price. Dubois immediately obtained from the CEM system a document still indicating the $999.97 price for the Computer but with a different UPC number than that on the Computer she took home.

Shortly afterward, Dubois was summoned to the security offices of the Fred Meyer Bountiful store. She met with Charles Dillier, regional head of photo-electronics. Dillier fired Dubois for taking an unauthorized discount, for being dishonest in purchasing the Computer knowing it had been mispriced, and for being insubordinate, given that a supervisor had instructed her not to sell or buy the Computer at the lower price.

The day after she was fired, Jones's letter arrived at the Bountiful store stating that the correct price of the Computer was $1999.97.

Fred Meyer managers keep in daily contact via telephone conversations regarding managerial issues such as sales volume, advertisements, borrowed merchandise and so forth. During one of these daily conversations between Robson and Jan Williams, a photo-electronics manager at another Fred

Meyer store, the two discussed the fact that Dubois was able to purchase the Computer at an unauthorized discount and that Fred Meyer security personnel were to come in and speak with her that morning. According to Williams, Robson informed him that the CEM system listed the Computer at an incorrect price, that everyone in the department was aware of that fact, and that Dubois nevertheless had purchased the Computer at the unauthorized price.

Williams subsequently spoke with Chris Cox, a photo-electronics manager, and informed Cox that there had been a problem regarding the pricing of the Computer and that loss prevention personnel would speak with Dubois about the situation. Williams spoke with Robson at a later date, whereupon Robson told Williams that Dillier had dismissed Dubois.

The parties do not dispute that Fred Meyer relied on the following two allegations: (1) Jones told Dubois that "absolutely under no terms should you sell the computer at $999"; and (2) Robson told Dubois that the price of $999 was wrong and that no employee should purchase the Computer for that price. Robson made his statement to Dubois in the presence of Swearngin, who confirmed Robson's statement that no employee was to purchase the Computer for $999. However, Dubois disputes the truthfulness of these allegations.

Dubois sued claiming wrongful termination based on an implied-in-fact employment agreement. She also claimed intentional infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, and slander. Fred Meyer counterclaimed for the difference between the price paid and the purchase price of the Computer.

The trial court granted summary judgment in favor of Fred Meyer. Dubois appeals.

## SUMMARY JUDGMENT

We affirm a summary judgment only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Because summary judgment involves questions of law, we review for correctness and do not defer to the trial court. *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992).

## WHETHER COURT MADE FINDINGS

██ Dubois claims the court erred in making findings pursuant to the summary judgment thereby precluding summary judgment. Specifically, Dubois claims that the court's finding that Fred Meyer had a substantial basis for terminating Dubois precluded summary judgment. Our task is to determine whether this statement is a resolution of a disputed fact or whether it is a restatement of an undisputed fact.

"In reviewing a summary judgment, this court must liberally construe the evidence and all inferences that may be reasonably drawn from the evidence in favor of the party opposing the motion." *Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 976 (Utah App.), *cert. granted*, 868 P.2d 95 (Utah 1993). "The trial court must not weigh evidence or assess credibility" in a summary judgment. *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles*, 681 P.2d 1258, 1261 (Utah 1984). In short, a court should not make findings of fact in a summary judgment other than a restatement of the undisputed facts stated in favor of the nonmoving party. *See Estate Landscape v. Mountain States Tel. & Tel. Co.*, 793 P.2d 415, 418 n. 8 (Utah App. 1990), *rev'd on other grounds*, 844 P.2d 322 (Utah 1992).

Here, the parties do not dispute that they had modified what began as an at-will relationship via a document entitled "Fred Meyer Employee Responsibilities." Also, Dubois does not allege that Fred Meyer fired her for a reason other than the ones stated. Her claim is that Fred Meyer's basis for firing her was mistaken. In short, she does not dispute that Fred Meyer believed it had a basis upon which to fire her, including the three bases it relied upon. Thus, the facts, when stated in the light most favorable to Dubois are that she had a good faith explanation for purchasing the Computer at an unauthorized price, and she honestly believed, based on the information she received from

the CEM system and from Jones's apparent inaction, that the price was correct.

Thus, the court's "finding" did not purport to resolve a factual dispute between the parties. Rather, the court noted the undisputed fact that the stated reason for Dubois's discharge was that of taking an unauthorized discount, and that neither party alleged the stated reason was a pretext. Finally, the court noted that Fred Meyer had a basis for its stated reason for termination.[2] In other words, when the trial court stated that Fred Meyer had a substantial basis for terminating Dubois, it did not rule on either party's credibility, nor did it resolve a disputed issue. Instead, it stated that Fred Meyer acted within the scope of the employment contract when it fired Dubois for actions it believed to be dishonest, without authorization, or insubordinate.

## WRONGFUL DISCHARGE

Dubois claims the court erred in dismissing her claim of wrongful discharge. Both parties agree that Dubois's initial at-will relationship had been modified by the Fred Meyer Employee Responsibility Form.

■ Utah law presumes "that any employment contract which has no specified term of duration is an at-will relationship." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989) (plurality); *accord Evans v. GTE Health Sys. Inc.*, 857 P.2d 974, 976 (Utah App.), *cert. granted*, 868 P.2d 95 (Utah 1993). At-will employment is a bundle of different privileges, any of which an employer can surrender through oral agreement. *See Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 307 (Utah 1992).

■ When an employee is working pursuant to a modified at-will relationship and claims he or she was terminated for a noncontractual ground, he or she must be able to "demonstrate discharge on some other ground, such as retaliation for exercising a legal right." *Retherford v. AT & T Communications*, 844 P.2d 949, 959 (Utah 1992).

We first consider to what degree the Form modified the parties' at-will relationship. The Form stated that its purpose was so that the employee would "know and understand the principal reasons for the action outlined below." The stated reasons for Dubois's termination fell under the category: "Employee Conduct Which Will Result in Immediate Termination Without Prior Warning." Because the contract contemplates immediate termination without notice upon a given event, the contract does not provide for an after-the-fact investigatory process. In addition to the listed conduct, Fred Meyer reserved the right to terminate an employee for "equally serious" employment-related conduct. The contract provided Fred Meyer with the right to determine whether such conduct had occurred. Again, the contract provided the employee no grievance right. Finally, the signature line of the document states that the employee "understand[s] this summary does not constitute an employment contract."

Given the narrowness of the at-will modification, we consider Dubois's allegations in the light most favorable to her to determine whether those allegations establish a claim. If they do not, then Fred Meyer is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c).

■ The fact stated in the light most favorable to Dubois is that she honestly believed that the lower price was the correct price for the Computer. However, the modified at-will contract entitles her only to know why she was terminated. It does not provide for investigatory procedures, and it allows immediate termination for a given event. Thus, the employment contract does not address circumstances such as this where the

---

**2.** The trial court may have gone too far in stating that Fred Meyer had a "substantial basis." Still, that is harmless error given that Fred Meyer could rely on any reasonable basis, other than a pretextual one, to conclude that Dubois had taken an unauthorized discount, had been dishonest, and had been insubordinate. Moreover, Dubois's contract allowed Fred Meyer to terminate her immediately and without prior notice for serious employment-related misconduct as "determined by the company." Given this clause, it was not error for the court to determine that Fred Meyer had a basis for termination. *See Russell v. Ogden Union Ry. & Depot Co.*, 122 Utah 107, 247 P.2d 257, 261 (1952).

employer's perceptions regarding the reason for termination differ from those of the employee and the employee wanted an evidentiary hearing. In other words, because Fred Meyer had a contractual basis for terminating Dubois in the event it believed she had been dishonest or insubordinate, it could do so.

We therefore affirm the trial court's summary judgment of Dubois's claim for wrongful discharge.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Dubois claims the district court erred in granting summary judgment in favor of Fred Meyer on her claim of intentional infliction of emotional distress.

■ The supreme court recognized a cause of action for intentional infliction of emotional distress

> where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 346–47 (1961).

■ However, "mere discharge from employment" does not rise to the level of outrageous or intolerable conduct by an employer. *Sperber v. Galigher Ash Co.,* 747 P.2d 1025, 1028 (Utah 1987); *accord Larson v. SYSCO Corp.,* 767 P.2d 557, 561 (Utah 1989). "Undoubtedly, every employee who believes he has a legitimate grievance concerning his discharge from employment experiences some emotional anguish as a result of that belief." *Sperber,* 747 P.2d at 1029; *see also Viestenz v. Fleming Cos.,* 681 F.2d 699, 704 (10th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982) (dismissing claim of intentional infliction of emotional distress where harm complained of resulted from fact of discharge rather than from improper conduct of employer).

■ Here, Dubois claims she established a prima facie case of intentional infliction of emotional distress because she alleged that Fred Meyer fired her based on an apparent mistake regarding the Computer's pricing. The mere fact of Dubois's discharge, coupled with the fact that the discharge may have been based on incorrect information, does not rise to the level of outrageous or intolerable conduct necessary to establish a prima facie claim of emotional distress. *See Sperber,* 747 P.2d at 1028–29.

We therefore affirm the trial court's summary judgment on this claim.

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Dubois claims the trial court erred in granting summary judgment on her claim of breach of the implied covenant of good faith and fair dealing. She claims that case law such as *Sanderson v. First Sec. Leasing Co.,* 844 P.2d 303, 308 (Utah 1992); *Heslop v. Bank of Utah,* 839 P.2d 828, 840 (Utah 1992); and *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 55 (Utah 1991) leave room for an implied covenant of good faith and fair dealing in agreements which do not fall within or modify the employment at-will doctrine.

Dubois misconstrues the analysis in this line of cases. None of these cases have held that there is not an implied covenant of good faith and fair dealing in either at-will or other sorts of employment contracts. Instead, the cases have held that while

> every contract is subject to an implied covenant of good faith, that covenant cannot be construed "to establish new, independent rights or duties not agreed upon by the parties." We also stated that an implied covenant of good faith cannot change an "indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge."

*Heslop,* 839 P.2d at 840 (quoting *Brehany,* 812 P.2d at 55).

While this implied covenant cannot establish new independent rights or duties not agreed upon by the parties, it protects an

employee from denial of rights under the contract, and from arbitrary termination. *See Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1049 (Utah 1989) (plurality).

The trial court correctly concluded that Dubois did not raise an issue of implied covenant of good faith and fair dealing because she alleged that her supervisor acted on bad information, not on bad faith. Thus, the trial court correctly dismissed this claim.

## SLANDER

Dubois claims the trial court erred in granting summary judgment in favor of Fred Meyer on the issue of slander.

The publication of a defamatory statement is conditionally or qualifiedly privileged in certain situations in which a defendant seeks to vindicate or further an interest "regarded as being sufficiently important to justify some latitude for making mistakes." Whether a publication is conditionally privileged is a question of law to be determined by the trial court, unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended or the defendant acted with malice.

*Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 115, at 825 (5th ed. 1984)). "This qualified privilege protects an employer's communication to employees and to other interested parties concerning the reasons for an employee's discharge." *Id.* This privilege is recognized at common law and applies generally in defamation cases. *Id.* (citing Utah Code Ann. § 76–9–506 (1990)).

Dubois does not challenge the trial court's determination that Fred Meyer had a privilege.[3]

If a qualified privilege exists, the burden is on the plaintiff to prove that the privilege was abused. The plaintiff can show abuse

of the privilege by proving that the defendant acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it.

*Id.* at 59 (citations omitted).

Dubois claims she overcame the conditional privilege by alleging facts that amount to a claim of malice. Malice in this sense means "personal hostility or ill will." *Id.* (quoting *Cox v. Hatch*, 761 P.2d 556, 559 n. 1 (Utah 1988)). Thus, the question is whether Dubois has alleged facts which state a claim that Fred Meyer acted with personal hostility or ill will.

Here, the facts stated in the light most favorable to Dubois are that Jan Williams and Chris Cox, both of whom were not Dubois's supervisors, were advised prior to her termination that she was going to be disciplined as a result of her purchase of the Computer. Another worker, Marty Christensen, also knew of the problem. The communications from Robson to Williams to Cox and others spread rapidly relating to an allegation that Dubois had a problem regarding the Computer. Because Dubois's claims that Fred Meyer acted hastily and on incorrect information do not allude to personal hostility or ill will, we affirm the trial court's order dismissing the claim.

## CONCLUSION

We affirm the summary judgment on all grounds.

JACKSON and DAVIS, JJ., concur.

---

**3.** The trial court did not make specific determinations in this regard, but dismissed this cause of action referring generally to the arguments in

Fred Meyer's brief in support of summary judgment.