Argued and submitted September 19, 1979, affirmed March 17, 1980

THOMAS,
*Appellant,*
*v.*
BOURDETTE, et al,
*Respondents.*

(No. A7610-14515, CA 12073)

608 P2d 178

Robert D. Newell, Portland, argued the cause for appellant. With him on the briefs was Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Elizabeth L. Perris, Portland, argued the cause for respondent. With her on the brief was McMenamin, Joseph, Herrell, Paulson & Babener, Portland.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

TANZER, P. J.

**TANZER, P. J.**

This action for breach of a management contract was tried to the court. Plaintiff-manager appeals the judgment for employer and asserts as a matter of law that:

(1) His failure to implement the employers' directives does not constitute just cause for his termination.

(2) His five-year managerial contract, which contains an option to purchase the business, creates an agency power coupled with an interest rendering the contract irrevocable except upon breach of contract which would justify his termination.

We affirm, because there is evidence to support the trial court's finding that plaintiff disobeyed his employers' directives in several particulars, and because those acts of insubordination constitute just cause for termination.

In 1974, plaintiff was employed as manager of ABC Mobile Brakes of Seattle. Defendants, the owners of an ABC franchise in Portland, sought out and eventually employed plaintiff to manage their business so that they could move to Arizona. The parties entered into an employment agreement which provided that plaintiff's employment would "commence on the 3rd day of September, 1974, and continue for five years and four months, unless terminated by mutual consent." Plaintiff's compensation was a salary of $225 per week, plus monthly commissions based on gross sales, plus a yearly bonus based on the increase in gross sales. The contract further gave plaintiff an option to purchase the business for $130,000 on favorable terms "after five (5) years of managing [it]." The purchase option was also exercisable upon the death of one or both of the owners.

Plaintiff came to Portland in September, 1974, and began managing the franchise. Defendants moved to Arizona in the fall of 1974. Gross sales grew 38 percent

during his first year and an additional 30 percent the next year and defendants' net income increased substantially.

Although the contract has no express reservation of authority, defendants continued to be actively involved in the business. They did the bookkeeping. They paid the accounts and the payroll. They retained authority to make all decisions regarding the purchase of items costing in excess of $25 and the purchase of any equipment. Plaintiff had no check writing authority except for a petty cash account of $100. Most business mail was sent by plaintiff to the defendants in Arizona. Defendants regularly sent various directives to plaintiff in Portland. Plaintiff considered these directives to be unwarranted interference with his managerial discretion. His refusal to follow some of them led to his dismissal in August, 1976, and to this lawsuit.

Defendants contend that plaintiff breached the contract by his insubordination in the following respects:

1. He kept inventory levels higher than the rate directed by defendants of 110-115 percent of monthly gross sales and he refused to reduce inventory by $10,000 after being specifically instructed by defendants to do so.

2. He purchased a metal lathe for $900 after defendants refused to authorize its acquisition.

3. He consistently and intentionally failed to open the shop at 7:30 a.m. and have the trucks out by 8:30 a.m. each day as directed by defendants.

4. He intentionally failed to have employees fill out time cards and weekly sales reports as required by defendants.

5. He intentionally failed to follow a number of other personnel and business directives issued by defendants.

Plaintiff contends that these actions as manager of ABC do not constitute just cause for termination.

Generally, an employer can discharge an employee at will without incurring liability, *see Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975), but a contract of employment for a definite period continues for that period, *Doolittle v. Pacific Coast etc. Works,* 79 Or 498, 502, 154 P 753 (1916), unless there is a breach, in which case the person in breach cannot enforce the contract, *Rayburn v. Norton,* 117 Or 328, 243 P 560 (1926). Where, as here, the facts are not in dispute and different inferences from those facts cannot reasonably be drawn, the court must decide as a matter of law whether an employer had good cause to discharge his employee. *Osburn v. DeForce et al,* 122 Or 360, 375-76, 257 P 685, 258 P 823 (1927).

Both parties argue based on the Restatement (Second) of Agency, which states in § 409(1) that good cause for discharge arises when an employee materially breaches his contract. Whether a breach is material varies with the particular circumstances of each case. Generally, the acts which are sufficient to be good cause for dismissal of a manager are qualitatively and quantitatively distinct from those required to terminate an employee possessing less responsibility and discretion. *See Mansfield v. Lang,* 293 Mass 386, 200 NE 110, 115 (1936). Comment (b) to Restatement § 409(1) suggests that

> "* * * a serious violation of the duty of loyalty or of obedience, constitutes an entire breach of contract. A wilful disobedience or a violation of duty of loyalty may constitute a material breach of contract although the harm likely to arise from such breach is very small."

The same breach of the duty to perform may be material or not depending upon whether the behavior is "wilful, negligent or innocent,"[1] Restatement of Contracts, 403, § 275. Here, the refusal to obey is admittedly intentional.

---

[1] "A principal is privileged to discharge before the time fixed by the contract of employment an agent who has committed such a violation

The parties' employment agreement does not expressly allocate power between them. The agreement merely states that plaintiff will be employed "as a Manager." The title "Manager" connotes one in a position of general authority with discretion to exercise that authority. Indeed, unless the parties expressly or impliedly agree otherwise, a contract to manage bestows upon the manager the same authority over the transaction of business as the owner had. *Zeppenfield v. Morgan*, 185 SW2d 898, 902 (Mo App 1945).

Here, the understanding of the parties of the extent of managerial discretion delegated to plaintiff is demonstrated by the conduct of the parties as they operated under the contract and by plaintiff's admissions at trial. Plaintiff's authority as manager was limited. For example, plaintiff admitted that policy decisions were defendants' prerogative. Moreover, testimony of both parties demonstrates that as a matter of practice defendants retained control of policy decisions and of all significant financial commitments, while giving plaintiff control only over the day-to-day operation of the business. Thus, the record supports the trial court's inference that defendants retained control of business policy.

Once it is established that the delegation to the manager is not complete and an employer has reserved the right to establish certain policy, the trier of fact must determine whether the managerial acts complained of constitute an invasion of the employer's domain or whether they are properly within the manager's operational responsibility. No general statement of principle can be applied to correctly segregate policy from nonpolicy decisions in all cases. The factfinder

of duty that his conduct constitutes a material breach of contract or who, without committing a violation of duty, fails to perform or reasonably appears to be unable to perform a material part of the promised service, because of physical or mental disability." Restatement (Second) of Agency § 409(1).

must look to the circumstances of each case to determine the scope of decision-making retained by an employer. *Kirchof v. Friedman*, 10 Ariz App 220, 457 P2d 760 (1969).[2]

Plaintiff's purchase of a lathe for over $900 was in direct disobedience of defendants' instruction not to make the purchase. Plaintiff had no authority to buy items for over $25 without first obtaining authorization from defendants. Plaintiff also refused to abide by defendants' specific directives to maintain lower inventory levels and to reduce inventory by $10,000. Moreover, plaintiff regularly failed to open the shop at the time required by defendants, and refused to require employees to fill out time cards and weekly sales reports.

The trial court concluded that the decisions as to equipment purchases, volume of inventory, opening hours, time cards and drivers' sales reports, were policy decisions reserved to defendants. We do not mean to imply that it is insubordination for a manager to manage, or to exercise those powers which his status confers, *see Rudman v. Cowles Communications, Inc.*, 30 NY2d 1, 330 NYS2d 33, 280 NE2d 867, 872 (1972). This record, however, supports the conclusion that plaintiff, by his actions in these matters, invaded defendants' authority.

Plaintiff argues that even if his actions would ordinarily be considered impermissible, they were privileged because they were taken to protect his interest in the profits of the business and in his purchase option. He argues that because his compensation is based partly on gross sales and partly on the increase in gross sales, he is entitled to disobey those directives which unreasonably retard gross sales. Also, he argues

---

[2] In *Kirchof*, for example, managers were hired to operate a restaurant, but the owners expressly reserved the right to set policy. These managers were dismissed when they refused to accept the owners' directions regarding the menu, entertainment, and advertising for the restaurant. The court found that these were policy directives, that the managers were bound to obey them, and therefore upheld the manager's discharge.

[201]

that because he is entitled to purchase the business at a fixed price at the end of his employment, he is entitled to disobey those directives which unreasonably tend to lower the value of the business. In support of these arguments, he cites the Restatement (Second) of Agency § 385, which provides:

"(1)  Unless otherwise agreed, an agent is subject to a duty to obey all reasonable directions in regard to the manner of performing a service that he has contracted to perform.

"(2)  *Unless he is privileged to protect his own or another's interest,* an agent is subject to a duty not to act in matters entrusted to him on account of the principal contrary to the directions of the principal, even though the terms of the employment prescribe that such directions shall not be given.

Comment a to Subsection (1) states:

"* * * The agent cannot properly refuse to obey on the ground that the obedience will be injurious to the principal's affairs, *unless the agent's compensation is dependent upon the execution of the undertaking* or unless it has been agreed that the agent's discretion shall control. * * *"

Comment d to Subsection (2) states:

"* * * [An agent] is under a duty not to act contrary to what the principal directs, *unless he is acting in the protection of an interest which he is privileged to protect.* This is true although the giving of such directions is a breach of the contract by the principal; the remedy of the agent is not to violate the principal's orders but to obtain such relief as is given for other breaches of contract." (Emphasis supplied.)

Plaintiff asserts that implementation of defendants' directives would have increased the expenses and decreased gross sales upon which his compensation was to be computed. Assuming this assertion to be true, plaintiff has still not shown grounds for disobedience. Plaintiff's right to compensation based on increased gross sales is not an absolute right to take any action, however imprudent, which has the effect of increasing sales. For example, he may not necessarily

[202]

do so by selling assets, lowering mark-up, or advertising excessively. The choice of reasonable policies is for the principal, not the agent. Defendants, on the other hand, may not unreasonably impose requirements in the name of policy which retard the ability of the manager to increase gross sales. It is possible, for example, that defendants' decisions regarding inventory and the lathe reflected reasonable concern about over-expansion or liquidity of the business. Because plaintiff has not established that defendants' policies unreasonably interfered with his ability to increase gross sales, he has not shown that he was privileged to disobey in order to protect his contingent interest in compensation.

Nor has plaintiff shown himself privileged under § 385(2), *supra*, to disobey defendants in order to protect his interest in the purchase option. One who has an option to purchase need not tolerate the unreasonable dissipation of the property. The manager's privilege to disobey, if the law is to recognize such a privilege at all,[3] would exist only if the owner was requiring action injurious to the business. Plaintiff believes that defendants' decisions do not allow as great development of the business as his desired policies would generate, but he has not shown that defendants' policy decisions have unreasonably diminished or restricted the value of the business. In the absence of such proof, plaintiff had no right to disobey directives. To hold otherwise would be to allow one in plaintiff's position to gamble on his own business acumen with another's capital.

In this case, plaintiff crossed the line from aggressive management to wilful insubordination contrary to a tacit agreement that defendants would control

---

[3] It has been held that an employer cannot discharge for insubordination by provoking an employee into disobedience of unreasonable, unwarranted or picayune directives, *see Rudman, supra* at 873, particularly where an employee leaves one position and takes another induced by his right to participate in profits or obtain an ownership interest. *Cf. Drzewiecki v. H & R Block, Inc.,* 101 Cal Rptr 169, 175, 24 Cal App 3d 695, 705 (1972).

business policy. Decisions regarding time cards, sales reports and business hours are arguably managerial rather than policy decisions and, therefore, arguably within a contractual delegation of authority to plaintiff as manager. Both the purchase of the lathe and the failure to reduce inventory unquestionably concerned substantial policy questions, so plaintiff's usurpation of defendants' authority in these matters gave rise to just cause for his dismissal. His insubordination in at least these two respects was a material breach of contract, unexcused by an entitlement to protect his compensation or his option interest, which bars him from enforcement of the remainder of the contract.

Affirmed.