N. Laverne MAGNUSON,
Plaintiff-Appellee,

v.

SMITH AND SAETVEIT, P.C., and Dennis D. Smith and William R. Saetveit, Defendants-Appellants.

No. 84CA0557.

Colorado Court of Appeals,
Div. II.

Decided June 5, 1986.

Peter H. Ney, P.C., Peter H. Ney, Steven Katzman, Littleton, for plaintiff-appellee.

Davis & Ceriani, P.C., Gary J. Ceriani, Dan L. Cartin, Denver, for defendants-appellants.

BABCOCK, Judge.

In this action for wrongful discharge, defendants, Smith & Saetveit, P.C. (the corporation), Dennis D. Smith (Smith), and William R. Saetveit (Saetveit), appeal the judgment entered following trial to the court awarding plaintiff, N. Laverne Magnuson, damages for wrongful discharge under an employment contract. Defendants allege that the trial court erred in: (1) its conclusion of law that they did not have "cause" to terminate plaintiff's employment; (2) its denial of their motion to dismiss as to Smith and Saetveit; and (3) its denial of their motion to dismiss for plaintiff's failure to prove damages. We reverse and remand with directions.

By written contract, plaintiff was employed part-time "in his capacity as a professional in areas of administration, management, tax, accounting, auditing, and such other areas as corporation may reasonably request...." With respect to these duties, plaintiff agreed to "exercise his best efforts for the benefit of corporation during his employment." The contract was for a one-year period, and was signed by: (1) plaintiff; (2) Dennis D. Smith as president of the corporation; and (3) both Smith and Saetveit in their individual capacities. It provided that the corporation could terminate plaintiff's employment without cause by giving plaintiff ninety days notice, and paying him $2,500 per month wages for the ninety-day period together with an additional $5,000.

As a result of conflicts which arose between the parties, the corporation directed a written memorandum to plaintiff which detailed its dissatisfaction with plaintiff's job performance, and which included specific limitations on his contact with office staff and his use of the firm telephone, a change in workstation from an office to a back room, and an order to report for work at 8:00 a.m. When plaintiff objected to these directions, and refused to comply with them, the corporation terminated his employment.

The trial court found that plaintiff had professionally performed his duties under

the contract, and that because the conditions imposed on him by the corporation were not set forth in the written contract, the corporation had attempted unilaterally to alter the written contract. Judgment was entered for plaintiff in the sum of $12,500.

## I.

Defendants first argue that the trial court erred in concluding that the corporation did not have "cause" to terminate plaintiff's employment. We conclude that the trial court's findings of fact are insufficient on this issue and remand for further findings.

■ The central element in an employer-employee relationship is the right of the employer to control the details of performance of the employee's duties. Restatement (Second) of Agency § 429 comment a (1958); cf. Jacobson v. Doan, 136 Colo. 496, 319 P.2d 975 (1957). Unless otherwise agreed, an employee is subject to a duty to obey all reasonable directions in regard to the manner of performing a service that he has contracted to perform. Restatement (Second) of Agency §§ 429, 385(1), and 385 comment a (1958); see generally Williston on Contracts § 1013B (W. Jaeger 3d ed. 1967). Thus, the employee's duty to obey reasonable instructions of the employer is an implicit term in an employment contract. Central Alaska Broadcasting, Inc. v. Bracale, 637 P.2d 711 (Alaska 1981).

■ A willful refusal of the employee to obey reasonable directions constitutes a material breach of the employment contract, and justifies the employee's immediate discharge. Central Alaska Broadcasting, Inc. v. Bracale, supra; Thomas v. Bourdette, 45 Or.App. 195, 608 P.2d 178 (1980); Kirchof v. Friedman, 10 Ariz.App. 220, 457 P.2d 760 (1969); Restatement (Second) of Agency § 409 comment b (1958). The reasonableness of the employer's directives is a question of fact to be determined from the circumstances of each case. Thomas v. Bourdette, supra.

Here, it was undisputed that plaintiff refused to obey the corporation's directives regarding his use of the office telephone, the time he was to report to work, and the change in his workplace from an office to a back room. Defendants claimed that these directives were reasonable considering plaintiff's prior inadequate performance and the nature of the duties he was to perform. Plaintiff, on the other hand, asserted that the directives were unreasonable because they were not in accordance with professional practice and were not uniformly applied within the corporation. Thus, a question of fact exists whether the directives were reasonable under the existing circumstances.

■ The trial court found that plaintiff had professionally performed his duties under the employment contract, but made no findings whether the corporation's directives were reasonable under the circumstances of this case. Therefore, there are insufficient findings of fact to support the trial court's conclusion that plaintiff was terminated "without cause."

## II.

Defendants next assert that the trial court erred in its denial of their motion to dismiss as to Smith and Saetveit. They contend that the trial court erroneously concluded that Smith and Saetveit were personally liable for breach of the contract. We agree.

Professional corporations for the practice of public accounting are governed by both § 12-2-131, C.R.S. (1985 Repl.Vol. 5) and the Colorado Corporation Code, § 7-1-101 through § 7-10-113, C.R.S. See §§ 12-2-131(1) and (3), and 7-1-103(2), C.R.S. Consequently, the powers and privileges established for a corporation and its stockholders by the Colorado Corporation Code are applicable to professional public accounting corporations unless such powers are inconsistent with the provisions of § 12-2-131, C.R.S. See §§ 12-2-131(3), and 7-1-103(4), C.R.S. Smith's and Saetveit's individual liability, then, depends on whether the wording of § 12-2-131(2)(d), C.R.S., oper-

ates to deny them the limited liability of shareholders provided by § 7–4–120, C.R.S., with respect to employment contracts of the corporation. We conclude that it does not.

A statute should be construed in a manner that serves the purpose of the legislative scheme, and, unless to do so would lead to an absurd result, the language should be given its plain meaning. *Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1 (Colo.1985). Where wording in a statute is susceptible to more than one interpretation, the legislative intent may be ascertained by considering the ambiguous wording in the context of the statute as a whole. *See R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980).

Section 12–2–131(2)(d), C.R.S., allows individual shareholders of a professional accounting corporation to except themselves from liability for the "acts, errors, or omissions" of the corporation's employees "during periods of time when the corporation maintains in good standing professional liability insurance" meeting certain standards. Those standards, *see* § 12–2–131(2)(d)(I) through (IV), C.R.S., require liability insurance for claims arising out of the "performance of professional services" by employees who are certified public accountants or registered accountants, and for "damages arising out of the acts, errors, and omissions of all *other* employees" (emphasis added).

■ A fair reading of the statute in context reveals a legislative intent to prevent shareholders of a professional accounting corporation from using the corporate shield to avoid personal liability for professional malpractice, including the acts, errors, and omissions of non-professional employees while they are engaged in the professional work of the corporation. On the other hand, we do not discern anywhere in the statute a legislative intent to subject shareholders to liability from acts of the corporation related to its relationship with employees. *Cf.* § 12–2–131(3), C.R.S.; *see*

*Schnapp, Hochberg & Sommers v. Nislow,* 106 Misc.2d 194, 431 N.Y.S.2d 324 (1980). Therefore, we conclude that the words "acts, errors, and omissions" contained in § 12–2–131(2)(d), C.R.S., do not apply to employment contracts between the professional corporation and its employees. *See Schnapp, Hochberg & Sommers v. Nislow, supra.*

Accordingly, the trial court's ruling that shareholders of a professional corporation are individually liable as if the corporation did not exist was erroneous.

Plaintiff argues, however, that irrespective of their liability under the applicable statutes, because both Smith and Saetveit signed the employment contract in their individual capacities, they are jointly and severally liable with the corporation for breach of the contract. We disagree.

■ There may be any number of parties to a contract, and multiple promisors may each promise a separate performance. Restatement (Second) of Contracts §§ 1, 9, and 9 comment c, illustration (1) (1979); *see Henry v. Montezuma Water & Land Co.,* 55 Colo. 182, 133 P. 747 (1913). The intent of the parties determines whether joint, several, or joint and several promises were made. *See Smith v. Woodward,* 51 Colo. 311, 117 P. 140 (1911). The parties' intent is determined primarily from the language of the contract itself, and extraneous evidence is admissible to prove intent only if there is an ambiguity in the terms of the contract. *Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748 (1978).

■ Here, each enumerated section of the employment contract specified the party who was making the promise. The sections of the contract dealing with plaintiff's employment, compensation, and termination without cause were all specific promises of the corporation only. The only section in which Smith and Saetveit, individually, made a specific promise to plaintiff was in the grant of an option to plaintiff for the purchase from each of shares of the corporation. Further, the agreement

was signed twice by Smith, once in his capacity as president of the corporation, and once in his individual capacity. Therefore, we conclude that the parties intended to make promises for separate performances, and that Smith and Saetveit were not parties to the corporation's promises relative to plaintiff's employment. *See Henry v. Montezuma Water & Land Co., supra.*

### III.

Defendants finally contend that the trial court erred in denying their motion to dismiss for plaintiff's failure to prove the element of damages. They argue that plaintiff failed to meet his burden of proving that the compensation due under the contract exceeded the compensation received from other sources during the unexpired term of the contract. This contention is without merit.

We agree with defendants that the correct measure of damages in an action for wrongful discharge under an employment contract is the compensation due under the contract less the compensation received from other sources during the unexpired term of the contract. *See Rhoads v. Albertson's, Inc.,* 40 Colo. App. 198, 574 P.2d 114, *rev'd on other grounds,* 196 Colo. 159, 582 P.2d 1049 (1977). However, the amounts received from other sources represent a mitigation of damages, and defendant has the burden of proving such mitigation. *See Comfort Homes, Inc. v. Peterson,* 37 Colo.App. 516, 549 P.2d 1087 (1976). Thus, plaintiff's *prima facie* showing of damages is met when he produces evidence of the compensation due him under the contract. Here, plaintiff met this burden, and we hold that the trial court did not err in denying defendants' motion to dismiss.

The judgment of the trial court which determined Smith and Saetveit to be individually liable is reversed. The cause is remanded for further findings of fact, consistent with the views expressed in Part I, on the issue whether Smith and Saetveit, P.C., had cause to terminate plaintiff's employment. If it is determined that the corporation had cause to terminate plaintiff's employment, the action shall be dismissed with prejudice. If it is determined that plaintiff's employment was terminated without cause, the judgment stands affirmed against the corporation.

SMITH and VAN CISE, JJ., concur.