IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 22, 2004 Session

## JERRY BIGGS v. REINSMAN EQUESTRIAN PRODUCTS, INC.

**Direct Appeal from the Chancery Court for Bradley County**
**No. 00-369     Hon. Jerri S. Bryant, Chancellor**

**No. E2004-00172-COA-R3-CV  - FILED DECEMBER 22, 2004**

Plaintiff sued for breach of employment contract.  The Trial Court found a breach and awarded damages.  On appeal we hold the employer had just cause to terminate, and reverse Judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Michael A. Anderson, Chattanooga, Tennessee, for Appellant.

Charles D. Lawson, Chattanooga, Tennessee, for Appellee.

### OPINION

In this breach of contract action, the Trial Court determined that defendant breached plaintiff's employment contract by terminating plaintiff's employment without cause, and entered judgment for $45,000.00 for plaintiff.

Defendant has appealed, insisting there was just cause to terminate plaintiff's employment.

The evidence before this Chancellor established that Biggs owned his own custom saddle and leather working shop in Florida for about 20 years.  He is a skilled craftsman, having been schooled in the leather working crafts in his youth by his father, and had one employee in his shop.

Biggs had known Glen Taylor, one of the owners of Reinsman Equestrian Products, for several years. Taylor was impressed with Biggs' quality and craftsmanship with leather. In 1998 Taylor approached Biggs about coming to work for Reinsman and starting up and running a leather-works factory, a new product line which was an area of expansion for the company. Biggs was not interested initially, but continued discussions with Taylor about the idea. Biggs had no experience in factory and production work or in managing a factory and advised the defendant owners that he did not think he was right for the job.

However, Biggs was offered the position at an annual salary of $45,000.00, and defendant asked him to write up an agreement for them to consider.

Biggs prepared an agreement in letter form, which states in pertinent part:

This agreement is for a term of five years, starting from three to six months from the date of this agreement. If the employer terminates the employee before the five year term the employer agrees to pay the employee the sum of one years salary to compensate him for the default of the agreement. The employee also agrees to a five-year agreement, if the employee leaves the employment of the employer before the five year agreement is fulfilled he agrees to pay the employer the sum of one years salary to compensate the employer for default of this agreement.

The owners reviewed and accepted the terms of Biggs' letter of agreement, and he relocated to Cleveland, Tennessee, and began working for Reinsman in August of 1998. The initial duties involved designing a line of leather products to be manufactured and offered for sale, setting up equipment and fixtures in the factory, and training and supervising of new employees. This process took 4-6 months, and production commenced in the Spring of 1999.

The employer had no problem with the product development and design. During his tenure Biggs designed approximately 50-75 new products for the defendant. However, the employer concluded that his performance as manager was deficient, and reached the point where termination of the employment relationship was justified. Taylor testified that Biggs encountered problems with employee absenteeism and retention, meeting production goals, quality control, and training, as well as problems with Biggs' performance of administrative duties, numerous errors and omissions in necessary paperwork and record keeping that cost the company time and efficiency, failure to adequately train and supervise the employees, and not maintaining the production equipment properly. Taylor further testified that Biggs performance showed no improvement despite frequent, and in depth counseling from his superiors for these deficiencies, all of which resulted in his failure to attain standards sought by defendant. On September 26, 2000, the company terminated Biggs' employment.

After hearing the evidence, the Chancellor entered judgment for the plaintiff and held that in the circumstance of an employment contract with a definite term the employee may be discharged before the end of the term for cause which she defined as:

something inconsistent with the relationship of master/servant or incompatible with the due and faithful performance of his duties. Some cases have held dishonesty, unfaithfulness to the employer's interest, or anything which indicates an unfitness for service for which the employee was engaged. It must injure the master's business or reputation, although proof of actual damages is not necessary.

Here there's no showing that the employee was dishonest or unfaithful or did anything proactively adverse to the employer's interest, so that the Court is entering judgment in favor of the plaintiff.

Since this case was tried without a jury, we review the case *de novo* upon the record, with a presumption of the correctness of the findings of fact by the Trial Court, unless the evidence preponderates against the findings. However, we review questions of law *de novo* with no presumption of correctness. Tenn. R. App. P., 13(d).

"Whether good cause exists to terminate an employment contract is a determination made on a case-by-case basis, and exists where the discharge is 'objectively reasonable.'" *Video Catalog Channel, Inc., v. Blackwelder,* 1997 WL 581120 (Tenn. Ct. App.). When cause is required for discharging an employee, the employer has the burden of proving the existence of good cause. *Phillips v. Morrill Electric, Inc.,* 1999 WL 771511 (Tenn. Ct. App.)

The failure to faithfully perform express or implied duties gives the employer the right to terminate the employment contract for cause, prior to the expiration of its terms without incurring liability. *Jackson v. The Texas Company,* 10 Tenn. App. 235 (Tenn. Ct. App. 1929).

Inattention to duty is sufficient cause for discharge, since it is incumbent upon the employee to reasonably perform to advance and develop the employer's business. *Wyatt v. Brown,* 42 S.W. 478, 481 (Tenn. Chan. App. 1897) . In general, any act which tends to injure the employer's business, interests, or reputation will justify termination of an employment agreement, and actual loss need not be proven. *Curtis v. Reeves,* 736 S.W.2d 108, 112 (Tenn. Ct. App. 1987). As a general rule, acts which are sufficient to be good cause for dismissal of a manager are quantitatively and qualitatively distinct from those required to terminate an employee possessing less responsibility and discretion. *See Thomas v. Bourdette*, *et ux*, 608 P.2d 178 (Oregon App. 1980).

The Trial Court's reasoning in the instant case carries an implication that because there was no intent or malice or malfeasance on plaintiff's part, that the employer failed to show just cause for terminating the employment. The standard does not require an element of intent to show just cause. Sub-performance that compromises the employer's interest or impedes the company's progress will justify the termination for cause. *See Booth v. Fred's Inc.,* 2003 WL 21998410; *Wyatt v. Brown,* 42 S.W. 478 (Tenn. Chan. App. 1897).

In *Lawrence v. Rawlings*, 2001 WL 76266 this Court was faced with interpreting "for cause" termination in the context of the statute providing for the grievance procedure for employees

of Tennessee educational institutions.  The statute itself did not define the term, so this Court looked to opinions construing the term in the private employment context, observing that "[t]he types of 'cause' that warrant an employee's termination include an employee's inattention to his or her duty to look after the employer's best interests or performance of an action inconsistent with the employer-employee relationship."  *Id.* at \*5.  Plaintiff points out that *Lawrence* deals with a statute governing state employment situations and therefore should not be applicable to the instant case, but there is nothing in the opinion that would distinguish the principles therein from application to the facts of this case.  The Court in *Lawrence* rejected the defendant's argument attempting to limit the scope of "for cause" termination to acts of serious misconduct, intentional wrongdoing, and other intolerable behaviors, concluding that the concept is much broader:

> We have concluded that an employee has been terminated for cause if the employee's termination stems from a job-related ground.  A job-related ground includes any act that is inconsistent with the continued existence of the employer-employee relationship.  Thus, an employee has been terminated for cause if the termination stems from the employee's failure to follow a supervisor's directions, poor job performance, or failure in the execution of assigned duties.

*Id.* at \*5.


In this case, the evidence establishes that plaintiff's job performance was deficient across several areas, and a consistent pattern of errors and poor management did not advance the company's interest.  Moreover, the evidence established that plaintiff was unable to improve even though he received frequent, detailed counseling from senior management.

In this regard, plaintiff sincerely argues that defendant did not hire him for his management skills or expertise, and since there was "not a concern" regarding the leather working Biggs was hired to perform, and did in fact perform, defendant was precluded as a matter of law from establishing that Briggs was terminated for cause.  Plaintiff's testimony undercuts this premise.  Plaintiff acknowledged that he knew that his job responsibilities included overseeing the lines that he had created, and that his duties would include supervising production after the product was developed.  He admitted that he knew that he would have the additional responsibility of training employees to do the work promptly and avoid employee turnover, and that his duties included ordering raw materials, maintaining the equipment, and preparing work orders and assisting with other work.

With hindsight, it is obvious that plaintiff is skilled as a craftsman, but not as a production line manager. The law pertaining to discharge for cause does not provide for a mismatch of employee skills to the requirements of the job as a defense to termination for unsatisfactory performance.  Contrary to the Trial Court's conclusion, plaintiff's inability to perform the duties required by his position, was conduct adverse to the employer's interest, regardless of his intention or reason for the deficiency.

We conclude the Trial Court erred in finding that defendant terminated plaintiff without just cause, because the Trial Court applied the wrong standard.

The Judgment of the Trial Court is reversed and the cause remanded. The cost of the appeal is assessed to Jerry Biggs.

_____
HERSCHEL PICKENS FRANKS, P.J.