IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2008 Session

# DAN STERN HOMES, INC. v. DESIGNER FLOORS & HOMES, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 07C-1128     Thomas Brothers, Judge**

---

**No. M2008-00065-COA-R3-CV - Filed June 30, 2009**

---

Appellants, a flooring company hired to install hardwood flooring at a home being built by Appellee, appeal the judgment of the trial court finding them liable for breach of contract and breach of warranty and awarding damages to Appellee. Appellants were hired to install hardwood flooring at a home being built by Appellee. After installation of the floors, problems developed; Appellants tried to correct the problems on numerous occasions to no avail. Appellee hired another subcontractor to refinish the hardwood flooring and to resolve the problems associated therewith. Appellee subsequently brought action against Appellant to recover amounts paid to subcontractor and the trial court awarded Appellee full measure of damages sought. We modify and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ. joined.

Thomas J. Drake, Nashville, Tennessee, for the appellant, Designer Floors & Homes, Inc. and Louise Frost d/b/a Designer Floors.

Joseph P. Rusnak, Nashville, Tennessee, for the appellee, Dan Stern Homes, Inc.

## OPINION

## I.  BACKGROUND

Appellants, Designer Floors & Homes, Inc. and Louise Frost d/b/a Designer Floors ("Designer Floors"), are a commercial flooring company, and Appellee, Dan Stern Homes, Inc. ("Dan Stern"), is a general residential building contractor. In May 2004, Dan Stern contracted with its clients for the construction of their new home. This contract provided for the installation of

approximately 4,120 square feet of hardwood flooring throughout the house. Pursuant to a written agreement entitled "Invoice" and dated July 21, 2004, Dan Stern hired Designer Floors to install and finish the hardwood flooring. The only agreement between the parties was this invoice.

Initially, Designer Floors was asked to provide common hickory flooring, but the purchaser of the home decided on select hickory wood flooring instead. The select hickory flooring planks were delivered in September 2004 and were installed soon thereafter, before the wood was fully acclimated, according to the testimony at trial. Designer Floors completed the work contemplated under the bid in November 2004; the buyers of the home took possession shortly thereafter. Dan Stern timely paid Designer Floors for all of the work completed by Designer Floors; final payment was made in February 2005.

The purchasers of the home were initially happy with the result; the floors were beautiful and the sand and finish job on the floor was well done. In the first couple of months after the buyers took possession of the home, however, the floors in some rooms began to squeak, and there were several places where the floors buckled together, buckled off the subfloor, or separated, causing cracks between the boards in the floor. Designer Homes was contacted on several occasions to come to the home and fix specific areas; however, the problems recurred in other areas. After two or three months the small scale fixes were no longer able to address the problem. Designer Floors returned to the home in April 2005 to repair additional problems; Designer Floors next returned to the home in October 2005 to address complaints which had arisen since the April visit. In the course of the October visit, a representative of Designer Floors met with representatives of Dan Stern and agreed upon a plan to basically refinish the entire floor while the homeowners were away on a two-week vacation.

During the first week of the homeowners' vacation, Designer Floors refinished the hardwood flooring; however, this refinish was unsatisfactory. Designer Floors agreed to refinish the floors a second time during the second week of the homeowners' vacation, but Designer Floors failed to appear at the property on the appointed date and time. Dan Stern contacted Designer Floors about the failure to appear and informed Designer Floors that it found another flooring subcontractor to refinish the floor. This replacement subcontractor was able to refinish the floor in a satisfactory manner and to otherwise correct the problems with the hardwood flooring.

After Designer Floors declined to reimburse Dan Stern for the costs associated with refinishing the floor, Dan Stern initiated this action in the Davidson County General Sessions Court, alleging breach of contract, negligent installation and repair of the floor, and failure to honor the warranty; Dan Stern sought damages in the amount of $8,103.21, plus attorneys fees. The court entered judgment in favor of Dan Stern for $5,594.04, which Designer Floors timely appealed to the Davidson County Circuit Court. At the conclusion of a bench trial, the court found in favor of Dan Stern on its breach of contract and breach of warranty claims and awarded judgment in the amount of $8,103.21.

Designer Floors appeals, presenting the following issues:

1. Whether [Dan Stern] carried its burden of proof that [Designer Floors] breached an implied warranty of fitness for a particular purpose pursuant to [Tenn. Code Ann. §] 47-2-315 and breached an implied warranty of merchantability pursuant to [Tenn. Code Ann. §] 47-2-2314.
2. Whether [Dan Stern] proved damages.

In addition, Dan Stern articulates the following issue:

Whether the trial court properly granted judgment in favor of Dan Stern Homes for its cost to repair the defective flooring as a result of Designer Floors' breach of contract.

## II. STANDARD OF REVIEW

This case was tried without a jury. Thus, the trial court's findings of fact are reviewed *de novo* on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d), *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are reviewed *de novo* without any presumption of correctness. Tenn. R. App. P. 13(d), *Biggs v. Reinsman Equestrian Prods., Inc.*, 169 S.W.3d 218, 221 (Tenn. Ct. App. 2004).

## III. ANALYSIS

### A. Implied Warranty of Fitness for a Particular Purpose

The implied warranty of fitness for a particular purpose is codified at Tenn. Code Ann. § 47-2-315, in pertinent part, as follows:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

*Id.*

In order to create a warranty of fitness for a particular purpose, the seller must have reason to know the purpose and that the buyer is relying on the seller's skill or judgment to furnish the goods. *Alumax Aluminum Corp. v. Armstrong Ceiling Systems, Inc.,* 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987).

In its ruling the trial court found the following relative to the implied warranty of fitness claim:

> I think that the plaintiff has succeeded in proving by a preponderance of the evidence there is a . . . breach of implied warranty of fitness for a particular purpose. It's clear that this flooring was intended to be utilized in an expensive residential project. The finish would be unacceptable to anyone, that the real issue boils down to the repeated attempts to try to correct it and why this crew didn't show up there on the 28th.

This finding of the intended purpose of the flooring and the unacceptability of the finish are supported by the preponderance of the evidence. The record is clear that Designer Floors knew, at the time it submitted its bid, the purpose for which it sold Dan Stern the select hickory wood – installation of hardwood floors in the home that was being built. Dan Stern relied upon Designer Floors' experience and skill to properly install the wood floors. Dan Stern also relied upon Designer Floors' skill and expertise to correct the problems later associated with the installation of the flooring.

We are not persuaded, however, that the warranty of fitness was breached in light of the proof that the problems associated with the floor were due in substantial part to the fact that the floor did not properly acclimate to the home prior to being installed. James Ralph, installation manager for Designer Floors with fifteen years' experience in the flooring business, testified that the problems with the flooring were due to the fact that the flooring was installed before the temperature control system in the home was in operation; therefore, the wood was not exposed to the actual environment to which it would be exposed and, consequently, could not acclimate - or equalize - to the environment. As a result, the floor cupped and cracks formed between the boards, in addition to various other issues, which required refinishing the floor. Mr. Ralph further testified that the normal period of acclimation is 72 hours and that Dan Stern determined when the installation took place. Mr. Ralph's testimony was uncontroverted and there was no countervailing proof that the condition was caused by the wood itself; that the problems would have occurred had the wood been properly acclimated; or, indeed, that the flooring was not fit for the intended purpose at the time it was installed.

Consequently, the court's holding that Designer Homes breached the warranty of fitness for a particular purpose is not supported by the preponderance of the evidence and is erroneous.

### B. Implied Warranty of Merchantability

The implied warranty of merchantability is codified at Tenn. Code Ann. §47-2-314, which provides, in pertinent part, as follows:

> (1) Unless excluded or modified (§ 47-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
> (2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purpose for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label, if any.

(3) Unless excluded or modified (§ 47-2-316) other implied warranties may arise from course of dealing or usage of trade.

*Id.* In order to recover under this warranty, the purchaser must show that the goods did not measure up to the requirements of the warranty at the time they were delivered. *Hollingsworth v. Queen's Carpet, Inc.,* 827 S.W.2d 306 (Tenn. Ct. App. 1991).

The trial court did not specifically hold that Designer Floors violated the implied warranty of merchantability. However, we note that there is no proof in the record that the flooring was not merchantable at the time it was delivered.[1] As with the warranty of fitness for a particular purpose, the proof in this record is that the problems with the floor related to the timing of its installation.

## C. Breach of Contract

The essential elements of a breach of contract claim are: 1) the existence of a contract; 2) nonperformance amounting to a breach of that contract; and 3) damages caused by the breach of that contract. *See Lifecare Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996). The parties acknowledge that the document entitled "Invoice" dated July 21, 2004, and signed by the owner of Designer Floors, Louise Frost, constitutes the contract at issue in this case. Under the Agreement, Designer Floors was to provide and install certain flooring at the home being built by Dan Stern, for which it would be paid. Designer Floors confirmed its understanding and interpretation of the Agreement by beginning, and subsequently completing, the work contemplated thereunder and by accepting payments from Dan Stern totaling approximately $26,461.20. According to the testimony of Ms. Frost, the policy of Designer Homes is "try to fix it and take care of it to the enth degree. As long as they'll let me in the house, I'm willing to do whatever to make a customer happy."

Designer Floors contends that it did not breach the contract but, rather, was not allowed to complete the refinishing of the floor. In accordance with its policy, Designer Floors made several attempts to remedy these problems, including the refinish of the floor. When Designer Floors failed to arrive on the appointed day and time to refinish the floor for a second time, Dan Stern Homes hired

---

[1] There was no proof of any representations of quality made by Designer Floors; rather the proof was that the purchaser of the home selected the flooring in consultation with Dan Stern.

a replacement subcontractor to remedy the problems. While there is conflicting testimony regarding the circumstances leading to Dan Stern's engagement of another subcontractor to refinish the floor, the evidence does not preponderate against the trial court's finding that Designer Floors failed to complete the refinishing, thereby breaching the contract.[2] Of note is the fact that the refinishing had to be completed expeditiously, as the owners were scheduled to return from their two week trip shortly and sufficient time had to be allotted to complete the refinishing.

## D. Damages

Because Designer Floors breached the contract, Dan Stern Homes is entitled to recover damages. The purpose of assessing damages in a breach of contract action is to place the plaintiff in the position the plaintiff would have been in had the contract been properly performed, as nearly as possible. *GSB Contractors, Inc. v. Hess,* 179 S.W.3d. 535, 541 (Tenn. Ct. App. 2005).

There is proof in the record that, as a direct and proximate result of Designer Floors' breach of contract, Dan Stern Homes paid $5,337.29 for labor and materials to have the floors refinished and repaired; $800.00 for touch-up painting; $450.00 for house cleaning; and $1,515.92 in labor to supervise the refinishing of the flooring, touch-up painting, and house cleaning. The out-of-pocket expenses incurred by Dan Stern is a proper measure of damages inasmuch as those expenses would not have been incurred had Designer Floors completed its obligations. Accordingly, the trial court did not err in awarding Dan Stern Homes judgment in the amount of $8,103.21.

## IV. CONCLUSION

For the foregoing reasons, the trial court's decision is AFFIRMED, as modified. Costs of this cause are taxed to Appellants, Designer Floors & Homes, Inc. and Louise Frost d/b/a Designer Floors, for which execution may issue if necessary.

_____
RICHARD H. DINKINS

---

[2] When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *See Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999).