IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2011 Session

## VICKI L. HUTCHINGS, v. JOBE, HASTINGS & ASSOCIATES

**Appeal from the Chancery Court for Rutherford County**
**No. 07-1282CV         Hon. Robert E. Corlew, III., Chancellor**

**No. M2010-01583-COA-R3-CV - Filed August 12, 2011**

Plaintiff and defendant entered into a contract of employment for a term of three years, wherein plaintiff would prepare tax returns for defendant tax firm. Defendant terminated plaintiff's employment before the three year term had expired and plaintiff appealed to this Court to reverse the Trial Court's finding of breach of contract and award her damages for the breach. We hold that the evidence does not preponderate against the Trial Court's finding that the employer had just cause to terminate plaintiff. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which FRANK. G. CLEMENT, JR., J., and RICHARD H. DINKINS, J., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Vicki L. Hutchings.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellee, Jobe, Hastings & Associates.

### OPINION

Plaintiff, Vicki L. Hutchings, filed a Complaint for Rescission and Damages against her former employer Jobe, Hastings & Associates (Jobe, Hastings). Hutchings, a certified

public accountant, sought rescission of the employment contract dated January 11, 2007 between herself and Jobe, Hastings, a certified public accounting firm. Plaintiff alleged that she had entered into the contract, dismantled her own private CPA practice, and commenced working with defendant in reliance on certain written and verbal assurances made by the principals of defendant. The contract provided for a three year term of employment, and she avers that defendant "unilaterally repudiated the contract terms" and terminated her employment. Alternatively, plaintiff alleged a claim for willful breach of contract, and that the parties be restored to their pre-contract status, including assessment of costs and damages incurred by her reliance on defendant's false representations.

Jobe, Hastings answered the complaint and filed a counter-claim, and alleged Hutchings demonstrated early on in her employment that she was unable to perform the essential functions of her employment quickly and accurately. As a result of her poor performance, defendant had to "write-down" its billings to its clients that Hutchings serviced and rehire a former employee to complete the work that Hutchings was unable to perform. They aver that as a result of this they suffered damages in the form of lost revenue and additional employee expenses.

At trial, following the testimony of several witnesses, at the conclusion of the proof, the Trial Court found that Ms. Hutchings had breached the contract she had with Jobe, Hastings, and stated as follows:

> It has been well-established that Tennessee is an at-will employment state, meaning that the Employer or the Employee may terminate the working relationship at any time without incurring any liability provided reasonable notice is given. However, the situation becomes more complex when an Employer and Employee sign an employment contract for a pre-determined length of time. In that situation, the Employer must have "cause" to terminate the employment relationship. The Employer, therefore, has the burden to prove the existence of good cause, otherwise, the Employer would have breached the contract. In Tennessee, in order to assert breach of contract, the moving part must prove: (1) the existence of an enforceable contract, (2) non-performance amounting to the breach of the contract, and (3) damages which flow from the breach.
>
> . . . . [T]he failure to faithfully perform express or implied duties give the employer the right to terminate the employment contract for cause, prior to the expiration of its terms without incurring liability. Further inattention to duty is sufficient cause for discharge, since it is incumbent upon the employee to reasonably perform to advance and develop the employer's business. . . . Sub-performance that compromises the employer's interest or impedes the company's progress will justify the termination for

cause.

The Chancellor concluded that when applying the foregoing law to the evidence presented, Hutchings clearly breached her implied duty to perform the duties within the employment contract as her production and accuracy relative to the tax returns she worked on were deficient by any standard when compared to her predecessor's work. The Court said that the employer had shown that it had sustained damages as a result of her poor performance.

Plaintiff perfected an appeal to this Court and has raised this issue:

Did the preponderance of the evidence support the Trial Court's finding that plaintiff/appellant breached an implied term of the contract of employment with defendant/appellee justifying her termination?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). We review credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003). The trial court is in the best position to resolve factual issues that hinge on credibility and an appellate court will not re-evaluate a trial court's assessment of a witness's credibility absent clear and convincing evidence to the contrary. *Hopper v. Moling,* No. W2004-02410-COA-R3-CV, 2005 WL 2077650.

The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

Hutchings contends that the Trial Court erred in holding that under her contract of employment, she was to reach a certain level in the preparation of tax returns, and in support of this contention she points to the contract of employment between the parties, which provides no probationary period or specific objective performance criteria but does provide for a three year term of employment. She argues that the employment contract should be enforced as it is written and that defendant had no grounds under the contract to discharge her for cause. The Trial Court, however, held that in addition to the terms of the written employment contract, the parties had entered into an implied contract regarding both competency and production and that Ms. Hutchings had thus breached the contract of employment.

In this jurisdiction an employer can terminate an employee for cause where a contract

between the parties provides for a term of employment. The Supreme Court held in *Nelson Trabue, Inc. v. Professional Management Company, etc.,* 589 S.W.2d 661 (Tenn.1979), that an employer could discharge for cause a person employed by a contract for a term of one year. In that case the Supreme Court restated the well settled general rules with regard to contracts of employment, noting that generally a contract of employment for an indefinite term is a contract at will and may be terminated by either party, whereas a contract for a definite term may not be terminated before the end of the term except for cause or by mutual agreement. However, an employer has the right to discharge an employee at any time for just cause. *Nelson Trabue* at 663. In the event that an employer discharges an employee before the contracted for term of employment is over, the employer must justify the dismissal by showing a breach on the part of the employee of some express or implied provision of the contract of service. *Id.*

In *Biggs v. Reinsman Equestrian Products, Inc.,* 169 S.W.3d 218 (Tenn. Ct. App. 2004), this Court discussed the law applicable to the termination of an employee for cause who is employed under an employment contract that contains a specific term as follows:

> Whether good cause exists to terminate an employment contract is a determination made on a case-by-case basis, and exists where the discharge is 'objectively reasonable.' *Video Catalog Channel, Inc., v. Blackwelder,* 1997 WL 581120 (Tenn. Ct. App.). When cause is required for discharging an employee, the employer has the burden of proving the existence of good cause. *Phillips v. Morrill Electric, Inc.,* 1999 WL 771511 (Tenn. Ct. App.)

> The failure to faithfully perform express or implied duties gives the employer the right to terminate the employment contract for cause, prior to the expiration of its terms without incurring liability. *Jackson v. The Texas Company,* 10 Tenn. App. 235 (Tenn. Ct. App. 1929).

> Inattention to duty is sufficient cause for discharge, since it is incumbent upon the employee to reasonably perform to advance and develop the employer's business. *Wyatt v. Brown,* 42 S.W. 478, 481 (Tenn. Ch. App.1897). In general, any act which tends to injure the employer's business, interests, or reputation will justify termination of an employment agreement, and actual loss need not be proven. *Curtis v. Reeves,* 736 S.W.2d 108, 112 (Tenn. Ct. App.1987) . . . .

> The standard does not require an element of intent to show just cause. Sub-performance that compromises the employer's interest or impedes the company's progress will justify the termination for cause. *See Booth v. Fred's Inc.,* 2003 WL 21998410; *Wyatt v. Brown,* 42 S.W. 478 (Tenn. Ch. App. 1897).

*Biggs* at 221 - 222.

The issue of whether good cause to terminate appellant's employment existed is determined by an evaluation of whether the discharge was objectively reasonable. As the contract provides no specific details as to the duties required of Ms. Hutchings, a determination of whether there was an implied agreement as to the duties she was to perform is required to be determined. Under the reasoning in *Biggs*, inattention to duty is sufficient cause for discharge as is under-performance of duties that compromises the employer's interests.

The Trial Court held that the facts showed that there was an implied agreement as to Ms. Hutchings' duties and the performance expected of her. The Trial Court found that the Jobe, Hastings advertisement that Ms. Hutchings responded to made it clear that the firm was seeking an accountant with a minimum of five years of experience with complex entity and individual tax returns. The Court also found that Ms. Hutchings held herself out as such an experienced and seasoned CPA who could do the job as advertised. The Court noted that although there was some dispute as to the number of tax returns Ms. Hutchings was told she would be responsible for, her performance was considerably below all expectations in terms of both production and accuracy. The Court said that Ms. Hutchings performance was deficient by any standard when compared to Ms. Johnson's production as tax manager the year before. The Court stated that there was testimony from five witnesses who testified regarding Ms. Hutchings' slow return of work and her high rate of errors. The Court noted that none of these witnesses expected such poor work product from a person with Ms. Hutchings professed experience and background, but they testified that they would expect such errors from a novice tax preparer.

The Trial Court concluded that "with all of the testimony and proof presented . . . it is evident that plaintiff had an implied duty to perform at the level in which she represented to the defendant. She breached that implied duty by failing to perform her job in an efficient and adequate manner, which is evidenced by her low level of returns performed and the high rate of errors. The defendant was damaged by the breach of duty when it expended further money to hire another CPA to pick up the remaining cases not being handled and the time and resources wasted by having to correct so many errors within the returns."

From our review of the evidentiary record, we conclude that the evidence does not preponderate against the Trial Court's findings of fact. Tenn. R. App. P. 13(d).

Defendant offered evidence that it is a certified public accounting firm and that the title of tax manager signifies that a person has a higher level of tax preparation and expertise than others in the firm, and when their previous tax manager resigned, they sought to fill that

position and advertised as follows:

## TAX MANAGER

MURFREESBORO CPA firm seeking Tax Manager. Qualified candidate should have an active CPA license and 5 - 7 years' experience utilizing strong technical expertise with complex entity and individual tax returns. References required. Salary commensurate with experience. Benefits available . . . .

Following this advertisement, Ms. Hutchings was interviewed by Mr. Jobe and Ms. Hastings, and Linda Moore, the office administrator, was also present. Jobe and Hastings testified that they showed Ms. Hutchings a document that reflected that the prior manager had assigned and prepared 246 tax returns for the 2006 tax season. Jobe and Hastings recalled that they were explicit that the position of manager required a similar output from Ms. Johnson's replacement, and Jobe testified that he told Hutchings that she was expected to work similar hours to which Johnson had worked and testified that given a similar work schedule to Ms. Johnson and plaintiff's qualifications, that he had every reason to believe she was capable of attaining the production goal they set for her. Further, Jobe testified that Ms. Hutchings told them unequivocally that she was confident she could meet that goal.

Mr. Jobe refuted much of Hutchings' testimony. He stated the problems with her efficiency and accuracy presented very soon after she started work in January 2007. He testified that her work was extremely slow and that the work she did complete was replete with errors. Those errors required additional partner and staff time to correct the returns prepared by her. As an example, he testified that she spent up to ten times as much time on a return for a particular client as Ms. Johnson had spent the previous year. Another example was she spent so much time on another return that the client complained and Jobe provided the work for free by writing off $2,800.00 from the client's bill.

Another witness, Susan Vandiver, a CPA and the audit manager at Jobe, Hastings, testified that she reviewed thirteen returns that Ms. Hutchings had prepared, and nine of them had errors. She explained that the errors were of the type you would expect a tax preparer with one or two years experience to make but she would not have expected someone with Ms. Hutchings experience to have such a high rate of errors.

Mr. Jobe testified that he reviewed returns prepared by Ms. Hutchings. He testified that near the end of the tax season he started to run a tally of returns prepared by her that he reviewed and signed off on fifteen of her returns. Of the fifteen returns, thirteen had errors that were such that the returns had to be redone before they could be filed, and he observed that this was an error rate of 87%. He then summarized the issues presented by Ms.

Hutchings: "We had several problems with Vicki. There were errors that were of a nature that we felt like with her experience they shouldn't be there, there were excess production time in returns. There were low production in number of returns. So we have three separate problems." He demonstrated how significant these problems were by stating that during the 2007 tax season, Ms. Hutchings prepared sixty-six tax returns and reviewed just over forty returns. In contrast, during the same season, but only from mid-March to April 15, Ms. Johnson, who was working part time, exceeded Ms. Hutchings' output by producing sixty-eight returns.

Ms. Hutchings in her defense, claimed that she had not been given any warning that her work was not up to standard until April 24, 2007 when she was terminated. However, Ms. Hastings, on cross examination, was asked why plaintiff was not provided a written statement telling her she would be terminated if she did not improve her performance. She replied:

> Mr. Jobe had met with her. Our management team had met with her. She was provided information on a weekly basis. She had received review notes from several of us. And it should have been apparent to her that she was not performing adequately. I think she also said she had even suggested maybe taking less money. So I don't know that there was anything else that we either should have done or needed to have done - - - to make the situation more bearable. Sixty-six returns versus 246 returns is pretty - - that's pretty apparent with or without a memo, Mr. Burger.

Finally, we note that Ms. Hutchings, own testimony contradicts her assertion that she had no notice that her work was unsatisfactory as she conceded that she offered to take a pay cut because she knew she was not meeting the production expectations of Jobe, Hastings's partners.

In sum, the evidence presented does not preponderate against the Trial Court's findings of fact and the Trial Court's application of those facts to the law was not in error. The Judgment of the Trial Court that Ms. Hutchings' breached the employment contract is affirmed, and the remaining findings in the judgment were not appealed and have not been considered.

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal taxed to Vicki L. Hutchings.

_____
HERSCHEL PICKENS FRANKS, P.J.